May Term,
1858.

DAILY
v.
THE STATE.

DAILY *v.* THE STATE.

In an indictment for stealing gold coin, to say *United States* gold coin, is the same as to say current gold coin of the *United States*, &c.; and where the several denominations and the value of such coin are alleged in dollars and cents, it may be presumed that the Court and jury will know that a coin of the value of ten dollars is an eagle, &c.

By the constitution, the jury are the exclusive judges of the law and the facts, in criminal cases, where they acquit; but they cannot pass upon the validity of the indictment. They judge the case from the evidence, in connection with such knowledge of the law as they may individually possess or acquire from the argument of counsel, and the instructions of the Court. If they acquit, the defendant is discharged. If they convict, then the Court rejudges the questions of law and of fact.

If the Circuit Court should sustain a conviction upon a bad indictment, the Supreme Court would set the defendant at liberty.

*Thursday,
June 24.*

APPEAL from the *Hendricks* Circuit Court.

PERKINS, J.—The grand jury returned into the *Hendricks* Circuit Court an indictment in these words:

"The grand jury of the state of *Indiana*, impanneled, charged and sworn to inquire in and for the body of *Hendricks* county, upon their oath present, that *William C. Daily*, on the tenth day of *January*, eighteen hundred and fifty-seven, at and in the county of *Hendricks* and state of *Indiana*, did then and there feloniously steal, take and carry away, two *United States* gold coins of the denomination and value of ten dollars, ten *United States* gold coins of the denomination and value of five dollars, and ten *United States* gold coins of the denomination and value of two dollars and fifty cents each,—altogether of the aggregate value of eighty-five dollars,—the personal goods and property of *Henry Carter;* contrary to the statute in such case made and provided, and against the peace and dignity of the state. *P. S. Kennedy*, Prosecuting Attorney."

A motion was made to quash the indictment because, in describing the coin, it did not, in the usual phraseology, appropriate to the purpose, state it as so many " pieces of the current gold coin of the *United States of America*, called eagles, half-eagles and quarter-eagles," &c.

The motion was overruled, and we think correctly. To

say *United States* gold coin, is substantially the same as
to say gold coin of the *United States;* all such coin is cur-
rent by law.    And the Court and jury know that a *United*
*States* gold coin of the denomination and value of 10 dol-
lars is an eagle, &c.    We regard the word "each" as re-
ferring to the several classes of pieces as though it were
repeated after the naming of them severally.    But if we
are wrong in this, still the clause in the indictment in which
the word is used contains a charge of grand larceny in it-
self, and hence the whole indictment could not have been
quashed for the uncertainty in other charges contained
therein.

On the trial, the Court instructed the jury "that they
had nothing to do with the question as to the sufficiency
of the indictment; that the Court had determined that."
To this instruction exception was taken.    It is contended
that it infringed the right of the jury to determine the law
and the facts.

The right of the jury, in criminal cases, to determine
the law and the facts, was the subject of long and earnest
controversy in the *English* Courts.    Under the *Tudors* and
*Stuarts* the *British* government had become despotic, and
oppressively restrictive of the rights of the citizen; and it
desired to use the Courts in enforcing and perpetuating
tyranny.    It wished to punish citizens, as for the crimes of
heresy, libel, treason, &c., in cases where the least freedom
was exercised in the worship of *God,* or in speaking and
writing upon the abuses of the government and the right
of opposition thereto.    Too many of the judges were eager,
or willing, at least, to make the Courts instruments for car-
rying into execution the despotic will of the monarch.    This
they could not well accomplish without restricting the
power of juries, as the members of those bodies naturally
sympathized with their peers, the oppressed class from
among whom they were selected.    Hence, the necessity of
limiting the province of the jury to a simple finding of
facts, leaving the law to be pronounced by the judges.
This enabled the Court, in every instance where any facts
were found, to declare that upon the facts, the law adjudged

May Term,
1858.

DAILY
v.
THE STATE.

the defendant guilty, or led it to compel the jury to so find in their verdict. In theory, the general doctrine above asserted, is correct; and where judges are honest and impartial, tends to the better administration of justice. The judges ought to be able to respond with more accuracy to the law than juries. But such was not the state of things formerly, in *England*. The judges were not always honest and impartial. They leaned to the side of tyranny, while juries leaned to the side of freedom. Hence, the advocates of popular rights insisted upon the right of the jury to determine, both what facts were proved in the case, and whether, in point of law, they constituted a crime; in other words, to determine the facts proved, and the law arising upon the facts, and thus be enabled to acquit the accused independently of the judges. Particularly was this so in cases of libels. 2 Blackf. 151.

This right—whether wisely or not, in the changed condition of things, it is not for us to say—has been secured to juries in this state by the constitution. Juries here, in criminal cases, have a right to determine the facts proved, and the law arising upon those facts, independently of instructions from the Court, in cases where they acquit, but not where they convict. We regard the new constitution as having to some extent enlarged the rights of the jury in this particular, (*Williams* v. *The State*, at this term,) (1) though, without the point being considered, this Court inadvertently intimated differently in the case of *Driskill* v. *The State*, 7 Ind. R. 339, a case rightly decided, however, upon its own facts. That such is the effect of the new constitution, is clear from the reasoning of Judge HOLMAN in 2 Blackf. 152. But the enlarged right of the jury does not extend to the indictment. They judge the whole case upon the evidence which goes to them from the witnesses, &c., in connection with such knowledge of the law as they may individually possess, and acquire from the arguments of counsel and the instructions of the Court. If they acquit, the defendant is discharged; but if they convict, then, in favor of liberty and life, the Court rejudges the questions

of law and fact. If the inferior Court should sustain a conviction upon a bad indictment, the Supreme Court would set the defendant at liberty.

As to the evidence in this case, we cannot say it did not justify the finding of the jury.

*Per Curiam.*—The judgment is affirmed with costs.

Judge HANNA concurs in the conclusion, but dissents from the reasoning, in this case.

*C. C. Nave* and *J. Witherow*, for the appellant.

(1) *Ante*, 503.