## PIGG *v.* THE STATE.

[No. 17,785. Filed March 27, 1896. Rehearing denied July 17, 1896.]

MISCONDUCT OF COUNSEL.—*Statement to Jury.*—*When Not Reversible Error.*—A statement made by the assistant prosecuting attorney, on a trial for murder, in the opening statement to the jury, that the reason murders were so frequent in the county was because life was held so cheap, is not cause for reversal on appeal, where

Pigg *v.* The State.

the jury was instructed not to consider the same and counsel was told not to go outside the record.

TRIAL.—*Evidence.—Admission of Improper Evidence.—When Not Reversible Error.—Homicide.*—The admission of incompetent evidence, on a trial for murder, tending to show premeditation and malice on the part of the defendant, is not prejudicial error where he is found guilty of manslaughter only, and there was competent evidence from which he might have been found guilty of the latter offense.

SAME.—*Examination of Witness.* — Whether a witness, who has already testified to a given fact, may be re-examined in regard thereto, is a question within the sound discretion of the trial court.

INSTRUCTION TO JURY.—*When Not Prejudicial to Defendant.*—An instruction to the jury in a trial for murder in the first degree that they might find the defendant guilty of either voluntary or involuntrary manslaughter, although not recognized as distinct crimes by statute, was not prejudicial to defendant.

SAME.—*When Erroneous Instruction Given is Not Reversible Error.*—An erroneous instruction on the subject of murder is not prejudicial to defendant, where he is found guilty of manslaughter only.

From the Sullivan Circuit Court. *Affirmed.*

*J. S. Bays,* for appellant.

*W. A. Ketcham,* Attorney-General, *W. L. Slinkard* and *F. E. Matson,* for State.

HOWARD, J.—The appellant was indicted for murder in the first degree, for the killing of Charles S. Lockard. By the verdict of the jury, he was found guilty of manslaughter, and his punishment assessed at imprisonment in the State's prison for twenty-one years.

It is contended that the court erred in overruling the motion for a new trial. The reasons for the motion call in question the correctness of the court's ruling; (1) in relation to the misconduct of counsel for the State; (2) in relation to the admission and exclusion of certain evidence; (3) in the giving of instructions to the jury; and (4) also, call in question the sufficiency of the evidence to support the verdict.

There is some conflict in the evidence; but that which sustains the verdict shows: That the appellant and the deceased were engaged together in keeping a saloon in a small town, named Lyonton, or Buel City, in Sullivan county; that the deceased lived in the country, about two miles from the saloon, and that the appellant was in charge of the saloon for the greater part of the time; that the homicide took place on a Sunday evening, a little after 8 o'clock; that late in the afternoon of that day the appellant was in the saloon and said to one of the patrons that he and the deceased were having trouble about the business; that he believed Lockard was swindling him, "trying to beat him, and he was going to have a settlement with him the next morning, and he said if he didn't settle with him square he'd kill him;" that at the time this conversation took place, the appellant had in his pocket a revolver which he had borrowed from his cousin, and with which he shot Lockard afterwards, that evening; that a little later in the day, being about 5 o'clock, Lockard, having come in from his farm, was in the saloon with appellant, and there was then some dispute between them, the result of which was that Lockard took the key from appellant and put him out of the saloon and locked the door, after which Lockard got into his buggy and returned home; that, later in the evening, about 8 o'clock, and just before the people came out from evening services in a neighboring church, the appellant and some frequenters of the saloon, were sitting on beer barrels in the rear of the saloon eating oysters, when a shot from a revolver was fired through a broken glass in the window, just over appellant's head; that immediately all the party ran away except appellant, who went around towards the front of the saloon; that a second shot was fired within the saloon, and near to or from the front of the

building; that it was a clear moonlight evening; that appellant stood at the side of the building, his body concealed by the side wall, but his head extended out, watching the front door; that as soon as the door opened and the body of the man within appeared, appellant, from his place at the corner, fired upon him; that the man in the door, who proved to be Lockard, fell wounded upon the sidewalk; that he died from the wound on the Wednesday after; that appellant, after shooting Lockard, went home, and then went to the county seat, where he gave himself up to the sheriff, surrendering his revolver and saying that he had shot Lockard.

It was the theory of the State that Lockard was displeased with appellant for keeping the saloon open on Sunday, and that there were also business misunderstandings between them; that Lockard was determined to keep appellant out; that he came back to the saloon for the purpose of watching appellant, and, finding him and his companions in the rear of the saloon, fired his revolver to frighten them off; that appellant, knowing that Lockard alone had a key to the building, knew that it was he who had entered and had fired the shot to warn him and his companions away; and that, still angry from the afternoon quarrel, appellant went around to the front to wait for Lockard to come out and to shoot him when he opened the door.

It was the theory of the defense, on the other hand, that appellant, on hearing the shot out of the rear window, believed that a burglar was in the saloon, and went around to watch him come out of the front door; that he cried out, "there is a burglar in the house;" that appellant's cousin, who then came up, said, "look out, he will come out shooting;" that as Lockard come out the door appellant was about to

say, "throw up your hands," when he saw the man in the door point his revolver at him, and then appellant fired; that until Lockard cried out, "I'm shot," appellant did not recognize it was his partner, but all the time believed it was a burglar.

While the jury did not find the appellant guilty of murder, as it would seem they might have done from the evidence of the State, it is yet clear that they adopted the State's theory, at the same time that they gave to the appellant the benefit of any doubt that might exist as to his knowledge that it was Lockard who was in the saloon. As there was competent evidence to sustain the conclusion reached by the jury, we cannot disturb the verdict on this ground.

The alleged misconduct of the assistant prosecuting attorney, of which complaint is made, occurred in his opening statement to the jury, in which he said: "The reason why murders are so frequent in Sullivan county is because life is held so cheap." The appellant objected to this language, and moved the court to set aside the submission of the cause and discharge the jury from its further consideration. The court sustained the objection to the remark, but overruled the motion to set aside the submission of the cause. The court also instructed the jury as to the objectionable language as follows: "Gentlemen of the jury, counsel have no right to refer to anything outside of this case, and you must not consider anything except such things as have reference to the case on trial, and counsel must not go outside the records in this case any more."

We do not believe the appellant was materially prejudiced by the alleged improper language, the objection to which was thus sustained, and which was condemned by the court in the instruction given to the jury. Nor do we think the impropriety of the lan-

Pigg *v.* The State.

guage was so gross that its evil effects, if any, might not thus be corrected. See Gillett Crim. Law, 2d ed., sections 901, 904, and authorities there cited. See also *Livingston* v. *State*, 141 Ind. 131.

The evidence objected to was given by Mrs. Lockard, widow of the deceased. She was permitted to testify, over the objection of appellant, that when her husband was about to return to the saloon, on the evening of the homicide, he informed her "that the defendant, Mack Pigg, was at the saloon or about the saloon, and that he was threatening, or he expected him, to break in; and he went back for the purpose of seeing what he was doing or going to do, to protect his property."

The verdict of the jury, however, as we think, shows that the admission of this evidence was harmless, even if erroneous. The evidence could only be of effect to show that there was ill-feeling between the parties, which fact, however, was abundantly established by other evidence, including that of the appellant himself. The evidence of Mrs. Lockard, moreover, in conjunction with other and legitimate evidence in the case, was calculated only to show premeditation and malice on the part of appellant, and that he killed Lockard by design, knowing at the time who he was. But the jury, by finding the appellant guilty of manslaughter, instead of murder, showed that they were not influenced by the improper evidence complained of.

As there was legitimate evidence, apart from that objected to, upon which the jury might have found the appellant guilty of manslaughter, as they did, or even of a higher grade of crime, as we think they might have done, we think it cannot be said that any error prejudicial to the appellant is shown by the admission of that evidence. Section 1964, R. S. 1894 (sec-

tion 1891, R. S. 1881); *Skaggs* v. *State*, 108 Ind. 53; *Binns* v. *State*, 66 Ind. 428; *Powers* v. *State*, 87 Ind. 144; *Epps* v. *State*, 102 Ind. 539; *Strong* v. *State*, 105 Ind. 1; *Galvin* v. *State*, 93 Ind. 550.

The witness, Lamon, at the request of appellant, was recalled for further cross-examination. The following question was objected to by the State, and the objection sustained: "State to the jury whether or not you saw the man that came out, saw his hand; and, if so, what did he have in his hand, as he was coming out of the door?" This witness, on his original examination, had said that he did not see the man in the saloon come out the door just before he was shot. The question, therefore, so far as it sought to ascertain whether the witness saw Lockard come out of the saloon, was but an effort to have evidence already given repeated. Whether such re-examination of a witness as to a matter already testified to by him shall be permitted, is a question within the sound discretion of the court. 3 Rice Ev. 335. And so far as the question sought to ascertain whether or not Lockard had anything in his hand, that was not cross-examination, but a part of appellant's original defense. He might, therefore, have called the witness for himself to prove such defense, if he desired. Whatever the object of the question, we do not think the appellant has any just cause to complain of the ruling of the court in excluding the answer. *Wood* v. *State*, 92 Ind. 269.

In the sixth instruction, the court charged the jury that under the indictment for murder in the first degree they might find the defendant guilty of either voluntary or involuntary manslaughter. It would have been better, perhaps, if the charge of the court had been that under the indictment for murder in the first degree the jury might find the defendant guilty of manslaughter, defining also the crime of man-

slaughter. In strictness, it cannot be said that the statute recognizes voluntary and involuntary manslaughter as distinct crimes. The crime is simply manslaughter; and that is defined to be an unlawful killing, without malice. The killing may be voluntary, in a sudden heat; or it may be involuntary, in the commission of an unlawful act. In either case, however, it is an unlawful killing, without premeditation or malice. In either case, also, the punishment is the same, being imprisonment in the State's prison not more than twenty-one years, not less than two years.

In *State* v. *Lay*, 93 Ind. 341, the court had under consideration the form of an indictment for manslaughter; and we do not think there is anything there said which is inconsistent with the holding here made.

We cannot see, moreover, that the appellant was harmed by drawing the attention of the jury to the fact that his act might have been involuntary. That could only tend to a mitigation of the punishment fixed by the verdict. And if the court had simply charged, as would seem to have been better, that a verdict of manslaughter would be good under the indictment for murder in the first degree, and at the same time had defined the crime of manslaughter, the effect could not have been more favorable to appellant.

By section 1904, R. S. 1894 (section 1835, R. S. 1881), it is provided that "the defendant may be found guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment or information."

Now, the commission of manslaughter, as defined. in section 1981, R. S. 1894 (section 1908, R. S. 1881), is plainly included in that of murder in the first degree,

as that crime is defined in section 1977, R. S. 1894 (section 1904, R. S. 1881). The essential element of manslaughter, as appears in the definition, is an unlawful killing. That element of the crime is certainly included in the charge of murder, in either degree. The unlawful killing may be either voluntary, upon a sudden heat, or it may be involuntary, and in the commission of some unlawful act. In either case, however, it is an unlawful killing; and the offense, as such, is included in the greater charge of murder.

That a verdict of manslaughter is good under an indictment for murder in the first degree, see further, *Moon* v. *State*, 3 Ind. 438; *Dukes* v. *State*, 11 Ind. 557; *Carrick* v. *State*, 18 Ind. 409; *Powers* v. *State, supra; State* v. *Fisher*, 103 Ind. 530.

It is contended that the twelfth instruction was erroneous for the reason that in it the court stated that the jury might find the defendant guilty of murder if they found that he killed the deceased purposely and maliciously. We do not think that the jury could be misled by this instruction, although the killing of the deceased "purposely and maliciously," but without premeditation, would be only murder in the second degree. Inasmuch, however, as the jury did not find the appellant guilty of murder in either degree, the instruction could not have been prejudicial to him.

We think that the able and zealous counsel for appellant mistakes the purpose of the fourteenth instruction, which was, as we think, simply to show the jury what circumstances would reduce the crime charged from murder to manslaughter. The instruction does not, when its particular purpose is considered, and, in connection with the other instructions given, undertake to set out the facts which would constitute the crime of manslaughter, but only what facts being found would reduce the crime from murder to

manslaughter. In our view, the instruction was favorable to appellant. In effect, it said to the jury that if the appellant in good faith believed the man in the saloon to be a burglar, and not the deceased, he could not be convicted of murder.

The fifteenth instruction, of which complaint is also made, but tended to carry out the same purpose as the fourteenth instruction. We do not think that either instruction was prejudicial to the rights of the appellant. See *Colee* v. *State*, 75 Ind. 511; *McDermott* v. *State*, 89 Ind. 187; *Goodwin* v. *State*, 96 Ind. 550; *Boyle* v. *State*, 105 Ind. 469; *Davidson* v. *State*, 135 Ind. 254.

We find no error, for which the judgment ought to be reversed

Judgment affirmed.