## HASENFUSS v. THE STATE.

[No. 19,467. Filed February 22, 1901.]

CRIMINAL LAW.—*Murder.*—*Administering Poison.*—*Voluntary Manslaughter.*—Under the provision of §1903 Burns 1894 a jury may find a person charged with committing murder in the first degree by means of poison guilty of voluntary manslaughter, although it may be difficult to conjecture a case where the crime of manslaughter can be said to be committed by means of administering poison.

From the Allen Circuit Court. *Affirmed.*

*H. Colerick, J. M. Barrett* and *S. L. Morris,* for appellant.

*N. D. Doughman, E. V. Emrick* and *W. L. Taylor,* Attorney-General, for State.

JORDAN, J.—Appellant was charged by indictment with having committed the crime of murder in the first degree by killing one Carl Westenfield by the means of the administration of arsenical poison. On her plea of not guilty she was tried by a jury, and the latter by their verdict found her guilty of voluntary manslaughter, and further found, in accordance with the indeterminate sentence statute, that she was a woman of the age of forty-eight years. Some

four days after the return of this verdict and the discharge of the jury appellant moved the court to discharge her for the following reasons: (1) That the verdict embraced a crime neither charged by the indictment nor within the purview of its allegations; (2) because the verdict in legal effect acquits the defendant of the offense of murder charged in the indictment, and (3) that under the indictment the defendant could be found guilty only of murder in the first or second degree, or not guilty of either offense. This motion was denied, and the court adjudged upon the verdict that appellant be imprisoned for an indeterminate period of from two to twenty-one years. She appeals and assigns errors upon the rulings of the court in denying the motion for her discharge and in rendering judgment upon the verdict. The contentions of her learned counsel are that, under the indictment in this case, she must be convicted of either murder in the first or second degree, or acquitted.

It is insisted that voluntary manslaughter is not included in the crime of murder as charged in the indictment, hence there could be no verdict returned finding her guilty of manslaughter, and that the verdict in effect is a finding of not guilty as to either of the degrees of murder. The insistence is further advanced that as the crime of voluntary manslaughter under §1981 Burns 1894, §1908 Horner 1897, is defined to be the unlawful killing voluntarily of a human being without malice, express or implied, upon a sudden heat, that therefore there can be no case or circumstance imagined which would render it possible to reduce the crime of murder perpetrated by the means of the administration of poison to that of voluntary manslaughter. It is contended that the charge of murder in the first degree by administering poison to a human being can not, in any sense, include the offense of voluntary manslaughter, because it can not in reason be asserted that the poison was administered to the deceased upon a sudden heat. It is

urged that so far as the verdict in this case purports to convict the appellant of the crime of manslaughter it is repugnant to the charge presented by the indictment and is no more within the issues of the case than had the jury found appellant guilty of the crime of burglary. In that event, it is argued, had the jury been discharged without the consent of the accused, such discharge would have operated as an acquittal, as she could not again be placed in jeopardy. We are confronted with the insistence of the Attorney-General that even though the contentions of appellant's counsel be true, still the motion for her discharge was properly denied, because it was not seasonably made, that is, at the time the verdict was returned and before the discharge of the jury. We pass this feature of the case, however, without consideration, preferring as we do to decide the question involved upon its merits.

Counsel for appellant concede that if the offense of murder in the first degree, as charged in this case, can be said to include voluntary manslaughter, then the verdict can not be assailed under the procedure employed herein, and appellant must fail in her appeal. The question presented for our consideration is: Was the jury upon a charge of murder in the first degree, perpetrated by means of administering poison, empowered to find the accused guilty of voluntary manslaughter, and could the court upon such a verdict, impose the punishment prescribed by the statute for that offense?

The crime of murder in the first degree as defined by §1977 Burns 1894, §1904 Horner 1897, may be paraphrased as follows: (1) Where a person purposely and with premeditated malice kills a human being. (2) Where a person either in the perpetration of, or in the attempt to perpetrate, any rape, arson, robbery or burglary, kills a human being. (3) Where one by the administration of poison, or by causing the same to be administered purposely and with premeditated malice kills a human being.

In either case the person so offending is by the statute declared to be guilty of murder in the first degree, the penalty of which is death, or imprisonment in the state prison during life.  The crime of manslaughter as defined by §1981 Burns 1894, §1908 Horner 1897, is committed where one without malice express or implied unlawfully kills a human being, either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful act.  In short, to constitute voluntary manslaughter, under the statute, the unlawful killing must be intentional, upon a sudden heat, without malice express or implied.  *Brown* v. *State,* 110 Ind. 486, and cases cited.  *Pigg* v. *State,* 145 Ind. 560.

Judge Gillett in his work on Criminal Law at p. 403, in treating of the crime of manslaughter, says: "Voluntary manslaughter possesses the common element of murder in both its degrees—the intention to kill—but it is distinguished from these crimes by an absence of malice, and, of course, premeditation.  The statute might be thus paraphrased without doing violence to its meaning: Voluntary manslaughter is an unlawful, intentional killing of a human being, without malice and without premeditation.  Although the statute adds 'upon a sudden heat,' it is only in the application of the definition to a given case that this element must be made use of, for there could be no such thing as an unlawful intentional killing without malice, unless it was done upon a sudden heat.  This mitigating fact reduces the crime to manslaughter, if upon the whole evidence it appears sufficient to rebut the presumption of malice arising from a voluntary killing."  It has been repeatedly held by this court for a period of nearly fifty years that upon an indictment for murder in either the first or second degree the defendant may be convicted of manslaughter.  *Moon* v. *State,* 3 Ind. 438; *Carrick* v. *State,* 18 Ind. 409; *Dukes* v. *State,* 11 Ind. 557, 71 Am. Dec. 370; *Powers* v. *State,* 87 Ind. 144; *State* v. *Fisher,* 103 Ind. 530; *Reed* v. *State,*

141 Ind. 116; *Pigg v. State,* 145 Ind. 560. In *Moon v. State, supra,* the court said: "An indictment for murder in the first degree is really an indictment for one of three distinct crimes, viz., murder in the first; murder in the second degree, and manslaughter."

We have some statutory provisions bearing upon the question involved. Sections 259, 260 of the criminal code, being §§1903, 1904 Burns 1894, provide as follows: Section 259. "Upon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto or of an attempt to commit the offense." Section 260. "In all other cases the defendant may be found guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment or information."

In *State v. Hattabough,* 66 Ind. 223, on p. 230 of the opinion, the court said: "The object of all these provisions was to authorize a conviction of the less degree of offense, or of an offense which is necessarily included in that which is charged, where the evidence establishes the less, but does not establish the greater offense."

In *Ex Parte Bradley,* 48 Ind. 548, this court in considering §259 as then contained in the criminal code of 1852 held that as an indictment for murder in the first degree included both degrees of murder and also manslaughter, therefore a defendant might be acquitted of murder in the first and found guilty of murder in the second degree, or he might be acquitted of murder in both degrees and convicted of manslaughter.

In *Pigg v. State,* 145 Ind. 560, on page 567 of the opinion, this court, after referring to §1904, *supra,* said: "*Now,* the commission of manslaughter, as defined * * *. is plainly included in that of murder in the first degree * * *. The essential element of manslaughter as ap-

pears in the definition, is an unlawful killing. That element of the crime is certainly included in the charge of murder, in either degree."

The rules under these provisions of the criminal code by the decisions of this court have been frequently applied in cases other than homicide. They are said to rest upon the familiar principle that an accused person may be acquitted of the grade of the crime charged against him, and convicted of one inferior thereto, or, in other words, he may be acquitted of the specific crime alleged, and found guilty of any offense the commission of which is necessarily included in the specific crime as charged. Certainly our decisions may be said to settle the question beyond controversy; and correctly so, that, under the law of this State in all cases of criminal homicide, regardless of the means by which it is committed, the crime is graduated and must be one or the other of the three grades of homicide, namely, murder in the first or second degree, or manslaughter, and that it is in the province of the jury to determine under the evidence of which they will convict the accused. There is no exception to this general power or authority of the jury to convict of manslaughter by reason of the fact that the homicide is committed by means of administering poison. This court is no more authorized to sustain such an exception where the homicide is committed by means of poison than it would be if it were committed in the perpetration of a rape or robbery. The jury, under our Constitution, being the exclusive judges of both the law and the facts in a criminal case, and having the power, as we have said, to find a defendant guilty of manslaughter under a charge of murder in the first degree, may, if they so determine, abuse such power, or improperly exercise it, and return a verdict for manslaughter upon a trial of murder in the first degree, although the facts proved in the case conclusively establish beyond any reasonable doubt the guilt of the accused of murder in the first degree. Such a verdict being within

the issue tendered by the indictment is valid so far as the power of the jury is concerned, and is binding upon the State and the court, and must stand unless set aside or vacated at the instance of the defendant.

In *Robbins* v. *State,* 8 Ohio St. 131, the defendant was charged by indictment with murder in the first degree under a statute which defines such crime substantially as does our own. The homicide in that case, as in this, was perpetrated by administering poison. It was held in that appeal that it was error for the trial court to instruct the jury, on the trial of the defendant for murder in the first degree by means of poison, that in such a case murder is not of different degrees, and that therefore if they find the accused guilty as charged they must return a verdict for murder in the first degree. In *State* v. *Dowd,* 19 Conn. 387, the court upon a full consideration sustained a verdict of murder in the second degree on a charge of murder in the first degree by means of administering poison.

It is possibly true as insisted by counsel for appellant that it may be difficult to conjecture a case where the crime of manslaughter can be said to be committed by means of administering poison. Be this as it may, the question here involved relates solely to the right or power of the jury, and when that right or power is once found to exist, the question may be said to be closed. It appears, however, that the jury in the case at bar discovered such a case, notwithstanding the assertion of counsel that none under any circumstances can be imagined. The evidence is not before us, and hence we are not advised as to its character. The jury, for aught appearing, may possibly have been controlled, as is sometimes the case, more by the impulses of mercy than by the law and the evidence, and thereby have verified what is frequently asserted that the hard places of the law are sometimes softened by the humanity of jurors. It follows, for the reasons stated, that the verdict in question is valid, and the motion to discharge appellant was properly denied.

Judgment affirmed.