### CRICKMORE *v.* STATE OF INDIANA.

[No. 26,910. Filed January 18, 1938. Rehearing denied April 5, 1938.]

*Jesse W. Peden, Clyde C. Karrer,* and *Alex Baker,* for appellant.

*Omer S. Jackson,* Attorney-General, and *Patrick J. Smith,* Deputy Attorney-General, for the State.

FANSLER, J.—Appellant, together with Harry Peats, Emmett Williams, and Gerald Haygood, was indicted for murder. The indictment is the same under which Harry Peats, appellant in Cause No. 26852, ante 560, 12 N. E. (2d) 270, decided at this term, was convicted. Appellant in this case was convicted of voluntary manslaughter at a separate trial.

The errors assigned and presented are that the court erred in overruling appellant's motion for a new trial, and in overruling his motion to quash the indictment.

As to the sufficiency of the indictment against a motion to quash, nothing need be added to what has been said in the Peats case. The indictment is sufficient.

The evidence for the state is substantially the same as in the Peats case. In addition, there was the testimony of a police officer that Crickmore had made a statement to him in all substantial respects conforming to Haygood's testimony. He testified that Crickmore told him that he had been hired "to go out and rock trucks of non-Union men." There was also the testimony of Haygood and two women that Crickmore was in the car with them, and threw "rocks" through the windshield of the car in which Penny was riding. Ap-

pellant's defense was an alibi. He testified that he was not present when the offense was committeed; that he was elsewhere.

He complains of the admission of evidence of other crimes. The evidence complained of was substantially the same as that described in the Peats case. A ■ *prima facie* case was made, showing that he was a party to a conspiracy or a plan to systematically stone trucks driven by non-union drivers. The evidence was competent.

Complaint is also made of the admission of testimony concerning the surroundings at the place where the offense was committed, and of the admission of ■ photographs for the purpose of showing the condition of the truck before and after the stones were thrown. We are not impressed with the objections to this testimony, but at most it only tended to prove that stones were thrown, and that one of them inflicted the injury upon Penny from which he died. By his defense, appellant made no contention that Penny had not been killed in the manner charged. His defense was that he had no part in the transaction, and that he was elsewhere. It follows that, even if the evidence had been improperly admitted, it could not prejudice appellant's rights.

One of the causes assigned in the motion for a new trial is that the verdict and judgment are not supported by the evidence. As we understand appellant's ■■ contention, it is that, although the intentional and premeditated throwing of stones from an automobile, running at seventy miles an hour, into the windshield of an approaching truck, if such an act is reasonably calculated to produce death, is sufficient evidence of an intention to kill, it is also sufficient to establish premeditation and malice; that if the jury believed there

was an intention to kill, their verdict should have been for murder, and not manslaughter; that, since the verdict was for the lower offense, the jury must have assumed that appellant only intended the unlawful act, consisting of throwing the stones, and that the verdict should have been for involuntary manslaughter. It is difficult to understand how the jury concluded that appellant was guilty of voluntary manslaughter, which implies an intentional killing, since it is clear from the evidence that, if he intended to kill, it was a planned and premeditated killing, which would be murder in the first degree, whereas, if the killing had been unintentional, and only the unlawful act of throwing the deadly missiles had been intentional, it would have been involuntary manslaughter. But it will be seen that the objection to the evidence supporting the verdict is that it is too much, and not that it is too little. In *Hasenfuss* v. *State* (1901), 156 Ind. 246, 252, 59 N. E. 463, 466, it was insisted that no set of circumstances could be imagined which would render it possible to reduce the crime of murder, by means of poison deliberately administered, to that of voluntary manslaughter. The court said: "It is possibly true as insisted by counsel for appellant that it may be difficult to conjecture a case where the crime of manslaughter can be said to be committed by means of administering poison. Be this as it may, the question here involved relates solely to the right or power of the jury, and when that right or power is once found to exist, the question may be said to be closed. It appears, however, that the jury in the case at bar discovered such a case, notwithstanding the assertion of counsel that none under any circumstances can be imagined. The evidence is not before us, and hence we are not advised as to its character. The jury, for aught appearing, may possibly have been controlled, as is sometimes the case, more by the impulses of mercy

than by the law and the evidence, and thereby have verified what is frequently asserted that the hard places of the law are sometimes softened by the humanity of jurors. It follows, for the reasons stated, that the verdict in question is valid." The evidence is before us here. It is sufficient to sustain the jury's verdict that the killing was voluntary, and, more, it would have been sufficient to sustain a verdict of murder in the first degree, since, if the missiles that caused the death were thrown at all, they were thrown premeditatedly and upon a preconceived plan, and a planned killing cannot but be malicious. Courts have power to set aside a verdict where the evidence is insufficient to sustain it, but no power to set aside a verdict which is sustained by the evidence, because there is no finding of guilt of a higher crime, which the evidence would also have sustained.

The indictment charged that Penny died on March 9th. The evidence showed that he died early in the morning of March 10th. Time is not of the essence of the crime of murder. There are offenses of which time is the essence; where it is an offense to do a thing upon a certain day, but this is not such. Where time is not of the essence, proof of time as charged is not necessary. It is sufficient to show that the crime was committed before the return of the indictment, and within the statute of limitations. It has been held that in a murder case it is sufficient if the indictment shows, and the proof establishes, that death occurred within a year and a day after the injury was inflicted; and that, where the indictment was returned within a year and a day, and it is shown that death occurred before the indictment was returned, it is sufficient. *Alderson* v. *State* (1924), 196 Ind. 22, 145 N. E. 572; *Shell* v. *State* (1897), 148 Ind. 50, 47 N. E. 144; *Myers* v. *State* (1889), 121 Ind. 15, 22 N. E. 781; *State* v. *Sammons* (1884), 95 Ind. 22. The proof here shows

that the offense was committed on March 7th, and that Penny died early in the morning of March 10th. The indictment charges that he died on March 9th. Section 9-1127 Burns Ann. St. 1933, section 2206 Baldwin's Ind. St. 1934, provides: "No indictment or affidavit shall be deemed invalid, nor shall the same be set aside or quashed, nor shall the trial, judgment or other proceeding be stayed, arrested or in any manner affected for any of the following defects: . . . Eighth. For omitting to state the time at which the offense was committed, in any case in which time is not the essence of the offense, or for stating the time imperfectly, unless time is the essence of the offense. . . . Tenth. For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." The date of the injury to Penny was alleged, and proven as alleged. The date of his death was not of the essence, and it is sufficient if it were proven that he died within the limit of time which would make the offense murder, a year and a day, and before the return of the indictment. This was proven. The variance between the allegation and proof was not substantial. *Cotner* v. *State* (1909), 173 Ind. 168, 89 N. E. 847.

It is also suggested that the indictment recites that the nature of the missile used was unknown to the grand jury, and that there is no evidence that the grand jury was not acquainted with the nature of the missile. Recitals in an indictment as to the grand jury's knowledge, or want of knowledge, must be accepted as true, unless the contrary affirmatively appears upon the face of the indictment. *Miller* v. *State* (1937), 211 Ind. 317, 6 N. E. (2d) 498.

Appellant testified as a witness. On cross-examination he was asked if it was not a fact that in the trial of Peats he took the witness stand, but refused to answer a question upon the ground that it might incriminate him. There was an objection

by appellant, which was overruled by the court. The witness answered: "No, I don't think I said that." The prosecuting attorney referred to the fact in argument. Appellant contends that the state is not permitted to sully or prejudice his defense or character by referring to his refusal to testify; and it is contended that the statement of the prosecuting attorney, commenting upon the fact that appellant had refused to testify in the other case, was misconduct and prejudicial. But there is no validity in this argument. If the defendant had not tendered himself as a witness, it would have been improper to comment upon his refusal to testify in this case, or in any other case, but, since he tendered himself as a witness, it was proper to cross-examine him as fully as any other witness. By becoming a witness, he waived his right not to be required to give evidence against himself.

Appellant assigns as independent error that the court erred in overruling his motion to declare the jury panel irregularly drawn, in overruling his motion to declare the second jury panel illegally drawn, and in overruling his motion to discharge the second special venire drawn by the jury commissioners. There is a serious question as to whether appellant has presented any question with respect to the legality of the jury. In *Durst* v. *State* (1920), 190 Ind. 133, 146, 128 N. E. 920, 925, it is said: "We do not wish to be understood as holding that error in the empaneling of the jury is not cause for a new trial, but it cannot be assigned as error under the seventh clause. . . . The first clause . . . provides that the court shall grant a new trial for 'irregularities in the proceedings of the court, or jury, or for any order of the court or abuse of discretion by which the defendant was prevented from having a fair trial.' Under this provision the action of the court in empaneling the jury may be reviewed." It is well established that rulings which may be assigned as

causes for a new trial, so that the trial court may have an opportunity to pass upon them, cannot be assigned as separate error, and will not be considered upon appeal unless assigned as a cause for a new trial. But we have considered the question. It appears from the testimony of a jury commissioner that, at the beginning of the year, 300 names were selected, 100 from each of the commissioner's districts, and placed in the jury box; that the box had not been emptied, and that there were some names remaining in the box from the previous year; that thereafter, from time to time, additional names were taken from the tax duplicate in the same manner and placed in the box as additional names were needed. It is contended that this invalidated the jury, since the statute contemplates that the jury box shall be emptied at the beginning of the year. Appellant relies upon *State* v. *Bass et al.* (1936), 210 Ind. 181, 1 N. E. (2d) 927, and *Walter* v. *State* (1935), 208 Ind. 231, 195 N. E. 268. The first case involved a grand jury, and it appeared not only that the names were put in the jury box without emptying it, but that the box was left in an exposed place; that it was not kept locked so that access to it for the purpose of adding names could be prevented; and that the name of one of the jury commissioners had been drawn from the box; that the names of two persons, who had been active in procuring an indictment, were drawn from the box; and that they were seated on the grand jury. The case involved the legality of a grand jury, whose investigations are *ex parte,* and in which, unless a person has been bound over, or knows that he will be investigated, there is no opportunity to challenge. In the second case it was made to appear that the names were not lawfully selected, and that there was discrimination against one class of voters in selecting the names of voters to be placed in the box. The names of grand jurors must be

regularly drawn from the box, and the panel may not be filled from bystanders. *Stipp et al.* v. *State* (1918), 187 Ind. 211, 118 N. E. 818. But, in the selection of a petit jury, the court has power, when its business requires it, to impanel a special jury from among the bystanders, and the question of whether or not a special jury shall be impaneled rests in the sound discretion of the court. *Albany Land Co.* v. *Rickel* (1904), 162 Ind. 222, 70 N. E. 158; *Pierce* v. *State* (1879), 67 Ind. 354. The defendant in a criminal case has no constitutional right to be tried by the regular panel, or by any other than an impartial jury impaneled in a mode prescribed by the statute. *Pierce* v. *State, supra.* If, in this case, the court had determined that the jury was irregularly drawn, the judge could have impaneled a jury from bystanders without waiting for the selection of a new panel; and no reason is seen why the persons whose names had been irregularly selected might not have been called and examined as to their qualifications and a jury made up from among them. There is no contention that the members of the jury were not qualified, or that they were biased or prejudiced, or that appellant's peremptory challenges were exhausted in an effort to procure an unbiased jury. The statute does not expressly provide that the box in which the names of jurors are placed by the jury commissioners shall be emptied at the beginning of each year, but it has been inferred from the language of the statute that such a procedure is contemplated. But, assuming that the irregularity invalidated the panel, no substantial difference can be seen between calling those persons whose names had been selected as qualified jurors by the jury commissioners, and impaneling a jury from among them, and the calling of other bystanders for the purpose of impaneling a jury, since there was ample opportunity to challenge. There is substantial reason for a distinction between the

methods of selecting grand jurors and petit jurors, which no doubt accounts for the legislation which permits the impaneling of petit jurors from among bystanders, and does not permit it in the case of grand jurors. It has not been made to appear that the court abused its discretion in requiring the jury to be selected from those persons who had been summoned to attend pursuant to their names having been drawn from the jury box.

Judgment affirmed.