JEFFREY BRUCE HOLLOWAY *v.* STATE OF INDIANA.

[No. 3-975A213. Filed July 28, 1976. Rehearing denied September 3, 1976. Transfer denied February 9, 1977.]

*James L. Wieser, Lund & Wieser Professional Corp.*, of Gary, for appellant.

*Theodore L. Sendak*, Attorney General, *Wesley T. Wilson*, Deputy Attorney General, for appellee.

GARRARD, J.—This appeal requires us to examine the law pertaining to convictions for lesser included offenses in the area of assault and battery.

The evidence favoring the verdict disclosed that a Gary police officer, who was working as a store security officer at the time, observed appellant Holloway in the store's parking lot. Believing that Holloway was carrying a pair of stolen shoes, the officer went up to Holloway's auto, displayed his badge and stated, "Gary Police Department officer, stop you are under arrest for shoplifting." When the officer then attempted to go around the vehicle, Holloway put the auto in gear and drove away. The auto struck the officer and knocked him to the ground. According to the officer, as a result he received a skinned knee, bruises and his pants were torn.

Holloway was charged with assault and battery with intent to kill. He was convicted of aggravated assault and battery. His appeal challenges the validity of that finding since there was no showing that any great bodily harm or disfigurement was inflicted. The state concedes the injuries were insufficient to constitute great bodily harm or disfigurement *See, Froedge v. State* (1968), 249 Ind. 438, 233 N.E.2d 631; *Allison v. State* (1973), 157 Ind. App. 277, 299 N.E.2d 618. However, the state argues that under Indiana law, since the evidence would have supported a finding of assault and battery with intent to kill, Holloway cannot complain because he was convicted of a lesser crime. In support of this position, the state urges those cases in which a conviction of voluntary manslaughter has been upheld despite the fact that no evidence

was presented of any sudden heat of passion, and despite the fact that the statute defining voluntary manslaughter speaks in such terms.

We first note that we are not here dealing with a lesser offense which is analytically a necessarily included offense. *See, House* v. *State* (1917), 186 Ind. 593, 117 N.E. 647. Assault and battery with intent to kill is defined as:

"Whoever with intent to kill another human being perpetrates an assault or assault and battery upon the other human being. . . ." IC 1971, 35-13-2-1.

The elements of the offense are intent to kill coupled with either an assault or assault and battery.

However, the aggravated assault and battery statute provides:

"Whoever intentionally or knowingly and unlawfully inflicts great bodily harm or disfigurement upon another person. . . ." IC 1971, 35-13-3-1

The critical distinction between aggravated assault and battery and other offenses of assault and battery is the nature of the harm inflicted upon the victim. *Froedge, supra; Allison, supra.* Accordingly, one can commit an assault and battery with intent to kill, and nevertheless fail to inflict great bodily harm or disfigurement.

Thus, aggravated assault and battery as a lesser included offense to a charge of assault and battery with intent to kill falls within that category of "possible" included offenses which depend upon the language used in the charge and the evidence produced at trial. *See, e.g., Thomas* v. *State* (1970), 254 Ind. 600, 261 N.E.2d 588; *Sullivan* v. *State* (1957), 236 Ind. 446, 139 N.E.2d 893. A person actually committing assault and battery with intent to kill may or may not commit aggravated assault and battery at the same time, depending upon the harm inflicted.

Do the murder-manslaughter cases contradict this analysis? As was developed in *Robinson* v. *State* (1974), Ind. App., 309

N.E.2d 833, *rev'd on other grounds* 262 Ind. 463, 317 N.E.2d 850, voluntary manslaughter would not appear to be a "necessarily" lesser included offense of murder in either degree under the *House* test because of the additional element of "sudden heat" not contained in the offense of murder. Nevertheless, the courts have refused to reverse convictions for voluntary manslaughter when there was sufficient evidence to sustain a conviction on a charged offense of murder, even though there was no evidence of "suddent heat." *See, Hopkins* v. *State* (1975), 163 Ind. App. 276, 323 N.E.2d 232; *Landers* v. *State* (1975), 165 Ind. App. 221, 331 N.E.2d 770; *McDonald* v. *State* (1976), 264 Ind. 477, 346 N.E.2d 569; *Robinson* v. *State, supra; Crickmore* v. *State* (1938), 213 Ind. 586, 12 N.E.2d 266; and *Hasenfuss* v. *State* (1901), 156 Ind. 246, 59 N.E. 463.

We believe this apparent contradiction can be explained through examination of the peculiar relationship between "sudden heat" and "malice" in the context of the early common law view of manslaughter.

The earliest case in which the rationale appears is *Hasenfuss* v. *State, supra.* There, the defendant was charged with first degree murder by means of administering poison. He was convicted by a jury of voluntary manslaughter. On appeal, defendant argued that voluntary manslaughter could not be a lesser included offense of first degree murder because of the additional element of sudden heat required for manslaughter. He claimed that the jury was therefore without power to convict of the "lower" offense. The Supreme Court disagreed. While the statutory definition of voluntary manslaughter included the element of "sudden heat," the Court observed, quoting from Judge Gillett:

" 'Voluntary manslaughter possesses the common element of murder in both its degrees—the intention to kill—but it is distinguished from these crimes by an absence of malice, and, of course, premeditation. *The statute might be thus paraphrased without doing violence to its meaning: Voluntary manslaughter is an unlawful, intentional killing*

*of a human being, without malice and without premeditation.* Although the statute adds 'upon a sudden heat,' it is only in the application of the definition to a given case that this element must be made use of, for there could be no such thing as an unlawful intentional killing without malice, unless it was done upon a suddent heat. This mitigating fact reduces the crime to manslaughter, if upon the whole evidence it appears sufficient to rebut the presumption of malice arising from a voluntary killing.' It has been repeatedly held by this court for a period of nearly fifty years that upon an indictment for murder in either the first or second degree the defendant may be convicted of manslaughter. [citations omitted] In *Moon* v. *State* [3 Ind. 438], the court said: 'An indictment for murder in the first degree is really an indictment for one of three distinct crimes, viz., murder in the first, murder in the second degree, and manslaughter.' " (Emphasis added) 156 Ind. 246, 249-50, 59 N.E. 363, 465.

In other words, "sudden heat" is not, like most other elements, an indicia of culpability. Instead, it serves to negate an indicia of culpability—malice. Consequently, the elements of voluntary manslaughter, *as a lesser included offense of murder,* become an intentional and unlawful killing without malice. As such, voluntary manslaughter would meet the *House* test as a "necessarily" lesser included offense of murder; and proof of murder, in either degree, would prove voluntary manslaughter.[1]

In addition, *Hasenfuss* articulated two substantive rationales for its holding. The first was statutory:

"We have some statutory provisions bearing upon the question involved. Sections 259, 260 of the criminal code, being §§ 1903, 1904 Burns 1894, provide as follows: Section 259. 'Upon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto or of an attempt to commit the offense.' Section 260. 'In all other cases the defendant may be found guilty of any offense, the

---

1. When voluntary manslaughter is itself the greater charge, proof of "sudden heat" may be required.

commission of which is necessarily included in that with which he is charged in the indictment or information."[2]

\* \* \*

Certainly our decisions may be said to settle the question beyond controversy, and correctly so, that, under the law of this State in all cases of criminal homicide, regardless of the means by which it is committed, the crime is graduated and must be one or the other of the three grades of homicide, namely, murder in the first or second degree, or manslaughter, and that it is in the province of the jury to determine under the evidence of which they will convict the accused." 156 Ind. 246, 250, 59 N.E. 463, 465.

The argument presented was that homicide is "an offense of different degrees" and manslaughter (voluntary or involuntary) is, according to judicial precedent, one of the degrees. Therefore, a jury may, under the statute, convict of the lower "degree" even if not "necessarily" included in the greater offense.

The second rationale in *Hasenfuss* was constitutional. Article I, § 19 of the Indiana Constitution provides:

"Jury in criminal cases—Right to determine law and facts.—In all criminal cases whatever, the jury shall have the right to determine the law and the facts."

This led the Court to observe:

"The jury, under our Constitution, being the exclusive judges of both the law and the facts in a criminal case, and having the power, as we have said, to find a defendant guilty of manslaughter under a charge of murder in the first degree, may, if they so determine, abuse such power, or improperly exercise it, and return a verdict for manslaughter upon a trial of murder in the first degree, although the facts proved in the case conclusively establish beyond any reasonable doubt the guilt of the accused of murder in the first degree. Such a verdict being within the issue tendered by the indictment is valid so far as the power of the jury is concerned, and is binding upon the State and the court, and must stand *unless set aside or vacated at the instance of the defendant*." (Emphasis added) 156 Ind. 246, 251-2, 59 N.E. 463, 465-6.

2. Presently, these statutes are IC 1971, 35-1-39-1 and 35-1-39-2.

The italicized portion is crucial because of its recognition of the limitations to Article I, § 19 developed in other cases, *i.e.*, that only acquittals and not convictions are beyond the reach of court review.

In *Crickmore* v. *State, supra,* defendant was charged with first degree murder and convicted by a jury of voluntary manslaughter. On appeal, appellant alleged that the verdict was not sustained by the evidence. The Court sustained the verdict, finding that the evidence adduced was sufficient to sustain a conviction of first degree murder because it tended to show that the killing was intentional, premeditated and, therefore, with malice. Citing *Hasenfuss,* the Court noted that although the jury could not possibly have inferred both intention and absence of malice from the evidence adduced, still:

> "Courts have power to set aside a verdict where the evidence is insufficient to sustain it, but no power to set aside a verdict *which is sustained by the evidence,* because there is no finding of guilt of a higher crime, which the evidence would also have sustained." (Emphasis added) 213 Ind. 586, 591, 12 N.E.2d 266, 268.

In *Robinson* v. *State, supra, Crickmore* is criticized because, it is said, there was no evidence of "sudden heat" and therefore the verdict of voluntary manslaughter was not, as asserted by the *Crickmore* Court, sustained by sufficient evidence. However, the court noted dictum from *Hash* v. *State* (1972), 258 Ind. 692, 284 N.E.2d 770, that:

> "This is an altogether different situation than one where the additional element contained in the greater offense is one of a state of mind which may be inferred, or not, from the overt acts. In a case such as first degree murder, for example, although the evidence clearly supports all the requisite elements, the jury may decline to believe that the act was premeditated or with malice and, under such circumstances, find a lesser offense not requiring such elements." 258 Ind. 692, 698, 284 N.E.2d 770, 773.

Consequently, the *Robinson* court observed in a footnote:

> "It is interesting to note that the *Hash* opinion's first degree murder example alludes only to 'the additional ele-

ment contained in the greater offense' (apparently without thought to the additional element of 'sudden heat' essential to the lesser degree of voluntary manslaughter) and may be read as implying that if the jury declines to believe the act was with malice it is justified in handing up a verdict of voluntary manslaughter even though there is no evidence of provocation or of sudden heat. That implication may be proper and may be the law." 309 N.E.2d 833, 848, n. 12.

In other words, voluntary manslaughter, *as a lesser included offense of murder,* might be defined as an intentional and unlawful killing without malice. On this analysis, the Court in *Crickmore* would be correct in stating that there was sufficient evidence to uphold the conviction despite the lack of evidence of "sudden heat."

In turning to the constitutional issue, we recognize that it is well established that Article I, § 19 of the Indiana Constitution will prevent a court from reversing an acquittal as contrary to the evidence but does not prohibit the reversal of a conviction due to insufficient evidence. Interpreting Article I, § 19 of the then new Constitution, the Supreme Court in *Daily* v. *State* (1858), 10 Ind. 536, observed at p. 538:

"If they acquit, the defendant is discharged; but if they convict, then, in favor of liberty and life, the Court rejudges the questions of law and fact."

*Beavers* v. *State* (1957), 236 Ind. 549, 141 N.E.2d 118, is the leading case on Article I, § 19. Rejecting a tendered instruction that the jurors were the exclusive judge of the law in criminal cases, the court said:

"Considering appellant's tendered Instruction No. 9 we find no provision in the constitution that warrants stating to the jury that it is the *exclusive* judge of the law in criminal cases. On the other hand, the constitution vests the judicial powers 'in a Supreme Court, in Circuit Courts and such other courts as the General Assembly may establish.' Art 7, § 1, Constitution of Indiana.

The Supreme Court has no jury functions. Its judicial powers include the determination of the law under the same constitution which grants such power to a jury. If possible,

the provisions of the constitution must be construed together, and not so as to create a conflict. To say the jury is the *exclusive* judge of the law would cause an irreconcilable conflict in the operation of at least two of the provisions of the constitution.

\* \* \*

If the jury is the exclusive judge of the law one may be asked what right does a trial court have to set aside a jury's verdict because it is contrary to law, or the evidence is insufficient when measured by legal rules? If the jury is the exclusive judge of the law its verdict of guilty would be final regardless of the court's belief that it was rendered in legal error. Juries are not at liberty to create new offenses, or find a defendant guilty of an offense not charged even though they might attempt to do so, because the judge in the last analysis has a duty under his oath to invoke the constitution, and prevent a travesty on justice. Parker v. State, 1894, 136 Ind. 284, 35 N.E. 1105.

It has been said that juries are judges of the law only in the sense that their verdicts of acquittal are not open to correction when they disregard the law. 11 Minn. Law Review (1927), p. 472." 236 Ind. 549, 557-8, 141 N.E.2d 118, 121-2.

Finally, in *Pritchard* v. *State* (1967), 248 Ind. 566, 230 N.E.2d 416, it was held that a mandatory instruction violated Article I, § 19 because it hampered the jury's power to declare the law and thereby acquit by determining that the facts alleged in the information did not constitute a public offense. However, the Court went on to say:

"Serious concern has often been expressed that under Art. I, § 19 of the Constitution of Indiana, the jury has the right to find a person guilty who should be acquitted. However, such a possibility is not, in our opinion, as serious a threat to the rights of a defendant as a specific and mandatory charge, such as is embraced in instruction number 24 which was given by the trial court in the instant case. A trial court has an inherent power and duty by granting a motion for a new trial, to correct a 'runaway' verdict which would convict an innocent man. And if that court fails in its responsibility, this Court has the same power and duty on appeal." 248 Ind. 566, 575-6, 230 N.E.2d 416, 421.

While not directly expressed in our prior decisions, it is also clear that Article I, § 19 does not empower a jury to convict

by defining the elements in an offense in a manner that does violence to the statutory language. This is true for several reasons. First, if Article I, § 19 permits a court to review a conviction for sufficiency of the evidence, it follows that the reviewing court must be guided by an immutable definition of the elements by which to test sufficiency. If the jury were free, under Article I, § 19, to define the elements as they chose, it would be impossible to say there was insufficient evidence in a particular case.

Secondly, *Beavers* held that Article I, § 19 was to be interpreted in a manner consistent with other provisions of the constitution. Article I, § 13 provides in part:

"In all criminal prosecutions, the accused shall have the right . . . to demand the nature and the cause of the accusation against him. . . ."

*State* v. *Brown* (1935), 208 Ind. 562, 196 N.E. 696, said of this article:

"This means that the offense must be charged in direct and unmistakable terms. The charge must be such that the defendant may know definitely what he has to meet, and that the court may know the crime intended to be charged." 208 Ind. 562, 565, 196 N.E. 696, 697.

If Article I, § 19 empowered the jury to freely interpret the law and the facts as requiring punishment, then Article I, § 13 would be without effect.

Finally, there is extensive dicta recognizing the limitation upon the jury's power to interpret offenses under Article I, § 19. In *Denson* v. *State* (1975), 263 Ind. 315, 330 N.E.2d 734, a defendant tendered an instruction which read:

"The Constitution of Indiana, Article I, § 18, provides:
'The penal code shall be founded on the principles of reformation and not of vindictive justice [sic].'" 263 Ind. 315, 317, 330 N.E.2d 734, 737.

Despite Article I, § 19, the Court, citing *Beavers*, held the instruction to be incorrect because:

"Thus, we see the jury is, in fact, confined to the existing law of the State in making a determination in a criminal case. It was never intended that the legislative prerogative to define crime be extended to the jury. The admonition found in Article I, § 18 of the Constitution, as above quoted, is an admonition to the legislative branch of the government and is addressed to the public policy which that body is admonished to follow in formulating the penal code. Thus, although Appellant's tendered Instruction No. 5 is a correct statement of the law, it is inapplicable as an instruction to a trial jury. Such an instruction would most likely mislead and confuse the jury as to its prerogative in applying the law to the facts in question. Thus, the trial court did not err in refusing the instruction. *Brewer* v. *State* (1969), 253 Ind. 154, 252 N.E.2d 429, 19 Ind. Dec. 264." 263 Ind. 315, 317, 330 N.E.2d 734, 737.

Also, in *Beavers* v. *State, supra,* the Court rejected defendant's argument that an instruction violated Article I, § 19 when it told the jury they might not wilfully and arbitrarily disregard the law as defined by statute.

The Court reasoned that:

"A jury has no more right to ignore the law than it has to ignore the facts in a case. The same constitutional provision grants to a jury the right to determine both the facts and the law in a criminal case. However, a verdict of guilty that is not supported by the facts or one that is contrary to law may be set aside by a court. If this were not true, such a verdict would be final and conclusive as to both the facts and the law. A motion for a new trial or an appeal would serve no purpose in such instances. Consistency does not authorize instructing a jury that its verdict as to the facts must be based upon the evidence as presented to it, but as to the law it is under no such duty, obligation, or restraint in arriving at its verdict.

\* \* \*

The jury, as well as the court, is limited and controlled in the determination of the law, not only by the constitution, but also by the legislative enactments. It goes without argument that the jury has no more right than a court has to nullify a legally enacted constitutional statute. Juries are not above the constitution or the law, and should not be told that they are. The courts, which include both judges and juries, must give full recognition to the legislative branch

of the government and its constitutional acts. The jury under its constitutional right to determine the law is restricted, controlled, and should be influenced by the equally important constitutional right of the legislature to make the laws, It has an oath and duty, just as a judge does, to observe and respect such coordinate rights set forth in the constitution. To tell the jury that it is not 'limited, restricted, controlled, or influenced, or hampered by the legislature' gives a warped interpretation to one of the provisions of our constitution, thereby permitting such a provision to override all others in the constitution. 236 Ind. 549, 559, 560, 562, 141 N.E.2d 118, 123-4.

Accordingly, it appears that neither Article I, § 19 of the Indiana Constitution, nor the voluntary manslaughter cases, to the extent they are separately premised upon historical malice-intent elements, will sustain the state's position.

There was a failure of proof on the element of the harm required to constitute aggravated assault and battery. In the absence of any evidence of serious bodily harm or disfigurement, the conviction cannot stand.

The judgment is therefore reversed.

Staton, P.J. and Hoffman, J., concur.

NOTE.—Reported at 352 N.E.2d 523.