## ALDERSON v. STATE OF INDIANA.

[No. 24,490.  Filed December 5, 1924.  Rehearing denied March
11, 1925.]

1.  HOMICIDE.—*Death completes the crime.*—A homicide consists
    not only of striking the fatal blow, but the death of the vic-
    tim.  p. 25.

2.  HOMICIDE.—*Averment of time and place of death.*—When
    death does not immediately follow the infliction of a wound
    it is necessary in describing the crime to allege as a part of
    the offense, when and where the victim died.  p. 25.

3.  HOMICIDE.—*Death must occur within a year and a day.*—
    Death must have occurred within a year and a day after the
    wound was inflicted to make the killing murder or man-
    slaughter, and this fact must appear in the indictment.  p. 27.

4.  HOMICIDE.—*Allegation of time of death unnecessary if within
    a year and a day.*—Where the indictment shows that it is
    returned within a year and a day from the date of the assault,
    the averment of the date of the death is unnecessary.  p. 27.

5.  INDICTMENT.—*Essential elements of crime must be averred.*
    —The rules of criminal pleading contemplate the innocence of
    the accused and the indictment must be assumed to contain
    enough to inform an innocent man of the facts to be shown
    against him.  p. 28.

6.  HOMICIDE.—*Indictment must allege elements of crime at com-
    mon law.*—An indictment for murder cannot omit any fact re-
    garded at common law as an essential element of the crime.
    p. 28.

7.  HOMICIDE.—*Variance in proof of time and place of death is
    fatal.*—An indictment charging a murder at a specified time
    and place, will not support a conviction for murder on evidence
    that the victim died at another time and place.  p. 28.

8.  INDICTMENT.—*Statements must be certain.*—An indictment
    must state the facts and circumstances which constitute the
    offense with such certainty and precision as will exclude every
    other intendment.  p. 29.

9.  HOMICIDE.—*Indictment must aver death in county.*—An in-
    dictment for murder must aver death in the county in which
    indictment was found.  p. 29.

10.  INDICTMENT.—*Defects not cured by verdict.*—Defects in an
    indictment are not cured by a verdict.  p. 29.

11.  HOMICIDE.—*Indictment must aver manner and means of
    death.*—An indictment for murder must state the manner of
    the death and the means by which it is effected.  p. 29.

12.  HOMICIDE.—*Sufficiency of averments of time and place of
    death in indictment.*—An indictment for murder which charged

the infliction of a mortal wound at a specified county on the 18th day of September, 1922, and continues "of which mortal wound  *  *  *  did then and there languish until the 19th day of September, A. D. 1922, and died" sufficiently states the time and place of death.  p. 32.

13.  CRIMINAL LAW.—*Instructions concerning the determination of the law by the jury held sufficient.*—An instruction that the jury shall be governed by the law as given it by the court is not objectionable in view of another instruction that in all criminal cases the jury has the right to determine the law and are the exclusive judges of the facts.  p. 32.

14.  CRIMINAL LAW.—*Instructions concerning burden of proof must be considered together.*—An instruction is not objectionable as tending to cast the burden of proof of defenses upon the defendant, when another instruction tendered by defendant and given tells the jury that the burden of proof is on the state to establish every material allegation and that the burden remains with the state throughout the trial and never shifts.  p. 33.

15.  CRIMINAL LAW.—*Instruction considered and held not to restrict jury's right to determine the law.*—An instruction that if the jury finds defendant guilty from the law and evidence as set forth in the instructions, they must convict him, is not objectionable as restricting the jury's right to determine the law in the case.  p. 34.

16.  CRIMINAL LAW.—*Refusal of instruction not error when already covered.*—The refusal of an instruction is not error where it appears that another instruction tendered and given covers every principle of law required for the protection of defendant.  p. 35.

17.  CRIMINAL LAW.—*Instruction concerning duty of jury to seek to acquit held properly refused.*—An instruction is properly refused, because an erroneous statement of the law, that instructs the jury to "endeavor from the beginning of the trial until all the evidence is heard and the argument of counsel made, and the instructions of the court given, to reach a verdict of not guilty."  p. 35.

18.  CRIMINAL LAW.—*Refusal of instruction already covered not error.*—It is not error to refuse an instruction tendered by defendant asking that the jury be informed of what the law is from his viewpoint of the facts, when another instruction tendered by him and given fully covers that phase of the case. p. 36.

19.  CRIMINAL LAW.—*Instruction concerning self-defense considered and held properly refused.*—An instruction in a prosecution for homicide which sets out only part of the evidence

concerning the encounter and says that the defendant had the right to repel force by force and if he, from his own standpoint, used no more force than was reasonably necessary under the circumstances, he acted within the law, and had the right to defend himself notwithstanding he may have been in the wrong prior to that time at another place, and if the jury have a reasonable doubt as to whether these facts are true or whether the defendant acted maliciously at the time of the fatal encounter, they should find the defendant guilty of either murder in the first or second degree, is error and properly refused. p. 36.

From Posey Circuit Court; *Herdis Clements,* Judge.

Charles Alderson was convicted of murder in the second degree and he appeals. *Affirmed.*

*Lindsey & Lindsey* and *W. D. Hardy,* for appellant.

*U. S. Lesh,* Attorney-General and *O. S. Boling,* for the State.

WILLOUGHBY, J.—This was a prosecution for murder brought by indictment in the Vanderburgh Circuit court in Vanderburgh county, Indiana, and sent to the Posey Circuit Court for trial. There was a trial by jury and verdict returned finding the appellant guilty of murder in the second degree, fixing penalty at life imprisonment.

Before taking a change of venue a motion was made by the appellant to quash the indictment for the reason that it did not state a public offense. After conviction appellant made a motion for a new trial which was overruled and judgment rendered on the verdict, from which the appellant appealed, alleging that the Vanderburgh Circuit Court erred in overruling his motion to quash and that the Posey Circuit Court erred in overruling his motion for a new trial.

The indictment charges that the appellant "on the 18th day of September, 1922, at and in Vanderburgh county, in the State of Indiana, did then and there unlawfully, feloniously, willfully, purposely and with

premeditated malice, unlawfully kill and murder Wesley Holder, by then and there feloniously, purposely and with premeditated malice cutting, stabbing and mortally wounding the said Wesley Holder with a knife which he, the said Charles Alderson, then and there had in his hand, and of which mortal wounds the said Wesley Holder, did then and there languish until the 19th day of September, A. D. 1922, and died."

The particular objection pointed out to this indictment by appellant is that the time and place of death are not specifically alleged. The appellant's contention is that the phrase "the deceased then and there languished until the 19th day of September, 1922, and died" does not mean that he died in Vanderburgh county, in fact that it does not state where he died or when he died; that under the allegations as to time it does not appear that he died within a year and a day after the wounding and as to the place, that it does not appear that he died in Vanderburgh county or even in the State of Indiana.

A homicide consists not only of striking the fatal blow which produced the death but it is not complete until the victim has died, therefore when death does not immediately follow the infliction of the wound it is necessary in describing the crime or killing to allege when the victim died and where he died as a part of the offense charged.

In *Brockway* v. *State* (1923), 192 Ind. 656, 138 N. E. 88, 26 A. L. R. 1338, this court said: "The stroke does not make the crime. The death does not make the crime. It is the composition of the two. Death must follow within a year and a day from the stroke, the injury being the cause of the death, or a contributing, or an accelerating cause. Where there is an altercation between two individuals and an assault and battery committed, it may well be that the one inflicting the in-

jury does not deny the assault, and the injury may be apparently slight and of a transient character, so that when the accused makes his defense the battle ground of the case is whether the assault was the cause, or contributing cause, of death. It thus becomes obvious that one of the most important things for the defendant to know, in order to prepare his defense, is the place of death, because he has a right to show that the alleged victim who died is not the real victim of his assault; or, if the real victim, that death did not result because of the assault, but from some other cause. How can he find out these things unless he is informed of the place of death, in order that he may get the evidence of witnesses who know the facts? We have a statute which provides that when a stroke is given in one county and death occurs in another, the jurisdiction to try the cause shall be in either county. The state therefore contends that when the accused is tried in the county of the stroke, the place of death is immaterial. That is to say, that the question is one of jurisdiction only. We think that it is more than this. The affidavit or indictment must show jurisdiction. It must also charge the offense with sufficient certainty that the court may know what judgment to pronounce, and with such certainty that it may be pleaded in bar of a subsequent prosecution for the same offense; and, further than this, with such certainty and particularity as to time and place of material averments that the defendant may prepare himself to meet the charge. Thus it will be seen that the question is not one of jurisdiction alone."

The attorney-general contends that the indictment is sufficient under §2225 Burns 1926, §2063 Burns 1914, which provides that "no indictment or affidavit shall be deemed invalid nor set aside or quashed, nor shall the trial, judgment or court proceeding be stayed, arrested

or in any manner affected by any of the following defects: * * * second, for want of any allegation of the time or place of any material fact when the venue and time have once been stated in the indictment or affidavit."

This statute does not apply in the instant case, appellant claims, because the place and time of death have not been stated in any other place in the indictment. Death must have occurred within a year and a day after the wound was inflicted to make the killing either murder or manslaughter, and this fact must be disclosed in the indictment. *State* v. *Dailey* (1922), 191 Ind. 678, 20 A. L. R. 1004. It has been held, however, that where the indictment shows that it is returned within a year and a day from the time of the assault an express averment of the date of death is not necessary. See *Brassfield* v. *State* (1892), 55 Ark. 556, 18 S. W. 1040; *Bowen* v. *State* (1859), 1 Ore. 270.

In the instant case it appears from the record that the indictment was returned within a year and a day of the commission of the assault upon the deceased, and, of course it appears from the indictment that at the time of its return he was then dead, it therefore appears from the record that the assault was perpetrated less than a year and a day before the death of the deceased.

1 Bishop, Crim. Proc. (2d ed.) §§407, 408, says: "Where the time and place have been sufficiently set out in the indictment, if then it becomes necessary to repeat them, this may be done, and it usually is, by the use of the words 'then and there.' There are some nice questions as to when an indictment will be defective if it omits to connect with these words a material allegation following the first. And there are circumstances, of a peculiar sort, in which the repetition of time must be made by some other words, 'then and there' not being

sufficient; and, on the other hand, when a mere repetition of the day will not answer, and 'then and there' must be employed. * * * What Chitty says on this subject * * * is the following: 'Time as well as place ought in general, not merely to be mentioned at the beginning of the indictment, but to be repeated to every issuable and triable fact; for wherever a venue is necessary time should be united with it. But after the time has been once named with certainty, it is afterwards sufficient to refer to it by the words "then and there" which have the same effect as if the day and year were actually repeated. But the mere conjunction "and" without adding "then and there" will in many cases be insufficient. Thus, in an indictment for robbery, these words must be connected with the stroke or the robbery, and not merely with the assault and in a case of murder, it is not sufficient to allege that the defendant on a certain day made an assault, and struck the party killed but the words "then and there" must be introduced before the averment of the stroke.' 1 Chitty, Crim. Law, 219, 222."

The rules of criminal pleading contemplate the innocence of the accused and are assumed to contain enough to inform an innocent man of the facts to be shown against him. An information for murder cannot omit or misdescribe any fact which at common law was regarded as an essential element of the crime. An information charging that respondent at a specified time and place made a felonious assault upon a person named, and did then and there murder him, will not support a conviction for murder on evidence that the person assaulted died at a later time and another place. The doctrine of relation cannot be so applied as to make the crime of murder complete at a specified time if the death did not

take place until later. *Chapman* v. *People* (1878), 39
Mich. 357; *Brockway* v. *State, supra; Ball* v. *United
States* (1891), 140 U. S. 118, 11 Sup. Ct. 761, 35 L.
Ed. 377.

An indictment must state the facts and circumstances
which constitute the offense charged with certainty and
precision; and every material circumstance in re-
gard to time and place, must be averred with
that degree of certainty which is sufficient, to
exclude every other intendment. It was indispensable
that the indictment should have averred that the mur-
dered party did die in the county in which the indict-
ment was found against the accused. *Riggs* v. *State*
(1853), 26 Miss. 51.

An indictment must contain a statement of the facts
constituting the offense charged against the defendant.
The defects of an indictment are not cured by a
verdict. In an indictment for murder, a state-
ment of the manner of the death and the means
by which it was effected, is indispensable. It is also
necessary to state the time and place, as well of the
infliction of the wound, as of the death of the party,
in order to fix the venue, and that it may appear on the
record that the deceased died within a year and a day
after receiving the injury. *People* v. *Wallace* (1858),
9 Cal. 30.

In *Riggs* v. *State, supra,* the court said: "It is said,
that the indictment is defective and illegal, because it
does not allege with sufficient certainty, the place at
which the party charged to have been murdered, died.
The facts and circumstances which constitute the of-
fense charged, must be stated with precision and cer-
tainty. And every material circumstance, in regard to
time and place, must be averred with that degree of
certainty which is sufficient to exclude every other in-

tendment. Arch. Crim. Plead. 34-381; Chit. Crim. Law, 280-283.   Let us apply this rule to the indictment under examination.

"The description of the act with which the prisoner is charged as a felony is contained in the following averment, to wit:

" 'That the said James Riggs, with a certain knife which he then and there in his right hand had and held, the said Joel E. Hunt, in and upon the right shoulder, and in and upon the right side of the body; and in and upon the right side of the belly of him the said Joel E. Hunt, then and there feloniously, wilfully, and of his malice aforethought, did strike and thrust, giving to the said Joel E. Hunt, etc., the mortal wounds, etc., of which said mortal wounds the said Hunt did then and there languish, and languishing did live for the space of about twenty hours, and did then die.'

"Every valid charge for murder necessarily contains three distinct propositions: 1, that the person slain was murdered; 2, that the party charged perpetrated the deed; and 3, that the felony was committed within the county where the indictment is found.   In the indictment before us, it is seen that no averment of place is affixed to the time when the subject of the alleged murder is stated to have died.   After the reception of the wounds which caused his death, he 'languishing did live for the space of about twenty hours, and then did die.'   It is manifest, that, tested by the rule above laid down, this averment is insufficient.   The fact that the murdered party did not die within the county of Monroe is not necessarily excluded, or rather it does not appear by direct averment and with certainty, that he died within that county."

In *State* v. *Kennedy* (1845), 8 Rob. (La.) 590, the court said: "The indictment, after stating the mortal blow, with the usual averments of time and place, pro-

ceeds: 'Of which mortal wound, so given by the said
Samuel Kennedy, with the deadly weapon aforesaid, to
the said Benjamin Wood Wait, the said Benjamin Wood
Wait did then and there suffer and languish, and lan-
guishing did live, and a few hours after did die of the
said mortal wound. No principle appears to be better
settled than that, in indictments for high offenses, those
termed felonies at common law, the averment of *time*
and *place* is to be repeated to every issuable and triable
fact. When these have been once set forth with cer-
tainty, they may, in every subsequent averment, be re-
ferred to by the words *then* and *there,* which are deemed
equivalent to a repetition of the time and place. The
time should be stated with such certainty that no doubt
can be entertained of the period really intended; and
such is the precision required in this respect, that any
uncertainty in the averment of time and place will viti-
ate the indictment. The material facts in murder are
the mortal stroke, and the consequent death, and the
death must appear upon the record to have occurred
within a year and a day from the time when the mortal
stroke was given. The averment, then, of each of these
material facts must, under the well established rule of
criminal pleading, be accompanied by an allegation of
a certain time and place." And in that case the court
further says: "Testing the indictment under consid-
eration by these well established rules we find, that al-
though there is a sufficient certainty in setting forth
the time and place of the mortal stroke, yet there is no
averment of the time and place of the death. The *then*
and *there* immediately precede and refer to the 'lan-
guished, and languishing did live' and not to the allega-
tion, 'and a few hours after did die.' The copulative
*and* it has been seen, is insufficient to connect the time
and place with the death. Nor will the grammatical
construction of the sentence support the position as-

sumed in the argument, that the *then* and *there* refer to the death. The facts of time and place of death cannot be inferred or ascertained by intendment; they must be precisely and distinctly stated. Nor will the averment in the *conclusion* of a correct time and place of death, cure this defect, but, on the contrary, will render it repugnant to the statement. At the close of the indictment the legal conclusions are to be drawn from the facts previously set forth in the statement. The facts of the time and place of the death not having been set forth in the statement, the legal conclusion cannot be drawn, that the deceased was murdered in the parish of Orleans, on the 29th day of December, 1844."

In the instant case the writer is of the opinion that the phrase in the indictment "did then and there languish until the 19th day of September A. D. 1922, and died" does not state the time and place of death with sufficient certainty, but the majority of the court hold otherwise and say that the time and place of giving the fatal stroke, having been stated in the indictment the words "did then and there languish until the 19th day of September A. D. 1922, and died" mean that he then and there (that is in Vanderburgh county, Indiana) did languish   *   *   *   and die. The court therefore holds that it was not error to overrule the motion to quash the indictment.

The appellant claims that the court erred in giving to the jury of its own motion instruction No. 3, and the objection pointed out to this instruction is, first, in all criminal cases the jury are the judges of the law and the evidence and, second, where the court instructs the jury that it shall be governed by the law as given it by the court in its own instructions, such instruction is erroneous. But in this case the court by instruction No. 2½ given by the court of its own motion, said, "in all criminal cases and in this

one the jury shall have the right to determine the law and are the exclusive judges of all questions of fact." The appellant claims that the court erred in giving instruction No. 4 of its own motion, because it tended to cast the burden of proof that the act was done 14. in self defense or upon a sudden heat or passion upon the appellant, while the law presumes he was not guilty. But it appears from the record that the court gave instruction No. 4 tendered by the appellant. In that instruction the court told the jury that the burden of proof to establish each and every material allegation in the indictment is upon the State of Indiana and remains with the State of Indiana throughout the trial of the cause, and never shifts to the defendant, and it makes no difference what defense to this prosecution is urged by the defendant he does not have to establish that defense, but if after hearing all of the evidence and the argument of counsel and the instructions of the court you entertain a reasonable doubt as to whether or not such defense has been established you should find the defendant not guilty, and in this action the defendant claims to have killed the deceased in self defense, which is affirmative in its nature, but it is not incumbent upon the defendant to prove to your satisfaction that he acted in self defense, but it is sufficient, if the evidence as a whole engenders in your minds a reasonable doubt as to whether the defendant acted in self defense, and if so, then you should find the defendant not guilty.

The appellant claims that the court erred in giving to the jury of its own motion instruction No. 4b. This instruction was given on the subject of self defense and appellant claims that it invaded the province of the jury and tended to cast a reflection upon the claim of the appellant that he acted in self defense and cites *Dorak*

v. *State* (1915), 183 Ind. 622. In that case the court gave an instruction as follows: "While it is necessary for the State to establish the killing of the deceased by the accused beyond a reasonable doubt, and to show facts of the death of the deceased, and to show that the person alleged to have been killed is actually dead; yet where the defendant attempts to justify the killing as having been done in self-defense, the burden is on the defendant to show he was justified in the act, and in the use of a deadly weapon, or to offer evidence sufficient to raise in your minds a reasonable doubt as to his justification of such acts."

That instruction was held erroneous because it contained the clause that "where defendant attempts to justify the killing as having been done in self-defense, the burden is on the defendant to show he was justified in the act, and in the use of a deadly weapon, or to offer evidence sufficient to raise in your minds a reasonable doubt as to his justification of such acts." There is no language in instruction No. 4b given by the court in the instant case which could be construed as casting a burden upon the defendant when he pleads self defense. And in instruction No. 4 given at the request of appellant the court expressly states that "it is not incumbent upon the defendant to prove that he acted in self defense but it is sufficient if the evidence engenders in your minds a reasonable doubt as to whether the defendant acted in self defense and if so you should find the defendant not guilty."

The appellant claims that the court erred in giving to the jury instruction No. 6 given by the court of its own motion. The objection urged to that instruction is that it required the jury to take the law as given to it by the instruction and thereby took away from the jury the right guaranteed under the Constitution to have the jury determine the law of

the case. But by instruction No. 2½ given by the court on its own motion the court stated to the jury that it shall have the right to determine the law and are the exclusive judges of all questions of fact. That was one of the instructions referred to by the court in instruction No. 6, when the court said: "In case the jury finds the defendant guilty from the law and the evidence as set forth in these instructions, of murder in the first degree, you will then determine whether the punishment shall be that he suffer death or imprisonment in the State prison during life, and so say by your verdict." It is thus seen that the appellant is in error when he claims that instruction No. 6 given by the court of its own motion in any way restricts the right of the jury to determine the law in the case.

The appellant urges that it was error for the court to refuse to give instruction No. 1, tendered by the defendant, but a comparison of that instruction with instruction No. 2 tendered by the defendant and given shows that every principle of law required for the protection of defendant is embraced in instruction No. 2 given by the court at the request of the appellant. There is no error in refusing to give instruction No. 1.

The appellant claims that the court erred in refusing to give to the jury instruction No. 15 requested by the defendant on the subject of presumption of innocence and reasonable doubt, but that subject is fully covered by instruction No. 2 given by the court at the request of the defendant. Besides instruction No. 15 contains a clause which cannot be approved by this court. It cannot be said that a jury should be instructed that it should "endeavor from the beginning of the trial until all of the evidence is heard and the argument of counsel made, and the instructions of the court given, to reach a verdict of not guilty." This

clause is not the law. The law of presumption of inno-
cence and reasonable doubt is correctly stated in instruc-
tion No. 2 tendered by the defendant and given.

The appellant urges that the court erred in refusing
to give to the jury instruction No. 16, requested by the
defendant and says that a defendant in a crim-
inal case has the right to have the jury informed
of what the law is from his viewpoint of the
facts. This proposition of law is not disputed but in-
struction No. 13 tendered by the defendant and given
by the court fully covers that phase of the case, and is
as follows: "In considering the fact as to whether or
not the defendant reasonably and honestly believed from
the action and conduct of the deceased at the time of
the fatal encounter and prior thereto, and from the sur-
rounding circumstances that he was in danger of death
or great bodily harm from the hands of the deceased,
you should view the situation from the standpoint of
the defendant as the circumstances presented them-
selves to him at the time, and if you entertain a reason-
able doubt as to whether or not the defendant did
honestly and reasonably entertain the belief that he was
in danger of death or great bodily harm from the hands
of his assailant, at the time of the fatal encounter, you
should give the defendant the benefit of the doubt."

In instruction No. 16, tendered by the defendant a
part of the evidence given in the cause is set out in such
instruction but the instruction does not set out
all the evidence and does not purport to, con-
cerning the encounter in which the deceased was
mortally wounded, and after setting out a part of the
evidence says, "the defendant had the right to repel
force by force and if he used no more force than was
reasonably necessary under the circumstances, viewed
from the defendant's standpoint, he acted within the
law, and had the right to defend himself notwithstand-

ing defendant may have been in the wrong prior to that time at some other place, and if you entertain a reasonable doubt as to whether these facts are true or whether the defendant acted maliciously at the time of the fatal encounter, then you should not find the defendant guilty of either murder in the first degree or murder in the second degree." This instruction is erroneous and it was not error to refuse it.

No error appearing in the record, the judgment is affirmed.