JOE BUCHANAN, JR. *v*. STATE OF INDIANA.
[No. 175S18. Filed August 13, 1975.]

*Arthur Lewis Belkind,* of Chicago, Illinois, *Barrie C. Tremper,* Public Defender of Allen County, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert S. Spear,* Deputy Attorney General, for appellee.

## I.

ARTERBURN, J.—On April 10, 1973, Appellant was indicted on charges of first degree (felony) murder and second degree murder. On April 30, 1974, a jury found him guilty of first degree murder. He appeals.

Appellant sets forth twenty-one (21) issues. We first consider his claim that there was insufficient evidence to allow a conviction. We consider only the evidence favorable to the State and the reasonable inferences to be drawn from that evidence. *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686, and cases cited therein.

In this case, an alleged accomplice, Nathaniel Sanders, testified that on March 12, 1973, he and the Appellant stole a shotgun from the house of an acquaintance. Sanders took his father's car, and he and Appellant arrived at the Gfell

service station in Ft. Wayne around 9:00 p.m. Sanders requested and received the restroom key from Richard Gfell, the station owner. Sanders used the restroom, returned the key and was joined at the door of the station by Buchanan who carried the shotgun.

Buchanan told Gfell, "This is a stick-up." Gfell said, "Is this a joke?" He reached into his back pocket, but Buchanan told him to take his hand out of the pocket. Gfell put his hands in the air. Buchanan shot him. Buchanan ejected one shell and the weapon jammed. Buchanan and Sanders fled. Richard Gfell died the next day, March 14, 1973. On March 20, 1973, Appellant Buchanan was apprehended with the murder weapon in his possession.

Appellant says that Sanders' testimony is untruthful. Appellant argues that cross-examination destroyed the reliability of Sanders' testimony and that we should understand this even though the jury did not. In short, Appellant wishes us to do what we do not do—usurp the function of the jury and judge the credibility of a witness. There is no merit in law to Appellant's sufficiency issue.

## II.

Appellant's next contention revolves around Ind. R. Crim. P. 4(B) of the Indiana Rules of Criminal Procedure, which provided at the time of this trial:

> "If any defendant held in jail or on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within fifty (50) judicial days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such fifty (50) judicial days because of the congestion of the court calendar."

The rather complex history which leads to this issue is as follows. The Appellant was arrested on March 20, 1973, and indicted for first degree (felony) murder and second degree murder on April 10, 1973. Between April 10, 1973,

and July 9, 1973, several continuances chargeable to the Appellant were granted so that the Appellant could secure private counsel. On July 9, Appellant entered a plea of not guilty and trial was set for January 8, 1974. On January 7, 1974, a continuance until January 21 was granted, again due to Appellant's arrangements for private counsel. On January 21, 1974, trial was set for April 23, 1974. On February 11, 1974, attorneys for the state and Appellant appeared in open court, at which time trial was reset for April 2, 1974. On March 18, 1974, the trial court granted a prosecution motion for continuance on the ground of the unavailability of a witness and reset trial once more for April 23. Trial commenced on April 23, 1974, at which time Appellant's motion to dismiss on the basis of Ind. R. Crim. P. 4(B) was denied.

Appellant contends that a motion for early trial pursuant to Ind. R. Crim. P. 4(B) was made on January 21, 1974. There is nothing in the record to support this contention apart from the argument of Appellant's attorney in support of Appellant's motion to dismiss on April 23 and possible inferences which may be drawn from the argument of the prosecutor in opposition to that motion. The record reveals the following statement by counsel for the Appellant in his argument in support of the April 23rd motion to dismiss:

> "Now at that time (January 21), Your Honor, I noted that the defendant had been incarcerated for almost a period of a year and certainly that wasn't due to any remiss on the part of the Court or on the part of the Prosecutor, but I did request that the case be advanced at that point as quickly as possible, if it would be possible, and Your Honor stated, after very carefully looking over his calendar, that your calendar would simply not permit it. However, if an earlier date arose, you would certainly consider it and notify me. And, Your Honor, my request for advance was made pursuant to Rule 4(B). . . ."

This is simply not sufficient to show that a motion or request pursuant to Ind. R. Crim. P. 4(B) was in fact made. That the prosecutor responded on the merits to the argument of the defendant is similarly unpersuasive. There is nothing

to show that the trial court was ever put no notice of the desire for a speedy trial pursuant to Ind. R. Crim. P. 4(B). On the contrary, the above-quoted passage is indicative of rather informal discussion not at all revolving around Ind. R. Crim. P. 4(B).

It is the duty of the Appellant to make a proper record and to bring a proper record before an appeals court. *Glenn* v. *State,* (1972) 154 Ind. App. 471, 290 N.E.2d 103. The early trial rule under Ind. R. Crim. P. 4(B) is not self-executing. *Gross* v. *State,* (1972) 258 Ind. 46, 278 N.E.2d 583. The record does not show that the rule was ever invoked.

Even if we were to accept the Appellant's contention that a motion for early trial was presented to the trial court, it is clear that the acquiesence of the Appellant to the setting of the April 23 trial date constituted waiver. Trial had been set for April 2, complying with Ind. R. Crim. P. 4(B) on the basis of court docket congestion. After the granting of the motion for continuance by the trial court on March 18, it was incumbent upon the Appellant to protest at his first opportunity if the trial date set was beyond the period designated by Ind. R. Crim. P. 4(B). *Utterback* v. *State,* (1974) 261 Ind. 685, 310 N.E.2d 552. The Appellant offered no such protest until the date of trial. In fact, the record reveals that counsel for the Appellant expressly consented in correspondence with the prosecutor to postponement of the trial beyond April 2. To permit a defendant to then successfully assert his right to a speedy trial on the date of trial is to invite attorney trickery of the most flagrant sort.

### III.

At the start of the trial, defense counsel orally requested the court to consider the possibility of prejudicial publicity during the course of the trial. The court said it would admonish the jury "in a home-spun fashion." Appellant's attorney said, "Fine, Your Honor." Appellant now claims that it was reversible error for the court to deny his motion "To

Exclude the Press From the Courtroom During Pre-Trial Hearings or Trial, And To Restrict Reporting of the Case." First, there is no record of a "Motion." Second, Appellant acquiesced in the admonition procedure as a substitute for exclusion of the press. Third, Appellant has compiled no record of damaging publicity but has merely asserted that such existed. Cf. *Irvin* v. *Dowd*, (1961) 366 U.S. 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751.

## IV.

Appellant claims that his cross-examination of Officer Geradot was erroneously restricted. Appellant wished Officer Geradot to relate conversations he had had during the course of his investigation of the crime with the three people who were present during the crime. Obviously, the remarks of these people to Officer Geradot were hearsay and properly excluded by the trial judge. Furthermore, each of these people later testified for the State and were cross-examined. At that time they were asked about their remarks to Officer Geradot. Thus, Appellant was not harmed by the justified restrictions put upon his cross-examination of Officer Geradot.

## V.

The argument is made by Appellant that the court erroneously permitted proof of other crimes to be introduced into evidence against the Appellant. Two instances are cited. In the first, two women testified that on March 20, 1973, they observed Appellant with a shotgun. Further testimony by police officers revealed that *this* shotgun was the murder weapon. No testimony about a separate crime has occurred.

The second instance was when one Mason testified that Appellant held a shotgun to the head of another person. Pointing a firearm at another is a crime. Ind. Code § 35-1-79-5, Burns § 10-4708 (1956 Repl.). However, Appellant did not object to this testimony and has therefore waived the alleged error. *New* v. *State*, (1970) 254 Ind. 307, 259 N.E.2d 696.

## VI.

In a tavern one night during trial, one of the jurors said to a fellow customer that there would be a hung jury. The juror admitted this violation of the standard admonition not to discuss the case. The juror told the trial judge the remark was made in jest. Nevertheless, the judge dismissed this juror over Appellant's objection, and Appellant assigns this decision as error. As in other of the issues he raises on this appeal, Appellant cites no authority to bolster his claim or to guide the Court. On the merits, Appellant has not shown that the discharge of the juror and his replacement by an alternate juror prevented Appellant from receiving a fair trial. Ind. R. Tr. P. 59(A)(1); Ind. R. Crim. P. 16.

## VII.

Appellant makes the argument that the crucial testimony of Nathaniel Sanders should not have been admitted because it constituted a violation of the *spirit* of *Bruton* v. *United States,* (1968) 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476, which held inadmissible an extra-judicial confession made by a co-defendant who did not testify at the joint trial. Appellant apparently does not understand *Bruton*. The *Bruton* rule is necessary to protect a defendant's Sixth Amendment right of cross-examination. Appellant is in error if he believes the purpose of *Bruton* is the exclusion of relevant evidence. Exclusionary rules are adopted in spite of their consequences, not because of their consequences. Appellant had total access to a cross-examination of Sanders; he fully exercised this constitutional right; he can not be heard now to say that his right was denied.

## VIII.

Appellant's next allegation of error is that there should be a new trial because the prosecution suppressed evidence favorable to the accused. *Brady* v. *Maryland,* (1963) 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215. However, it seems

that what Appellant has in mind is not, in actuality, the suppression of evidence. First, Appellant refers to the fact that the prosecution interviewed and conferred with police-officer Cook prior to that officer's testimony as a defense witness. It is not alleged that Officer Cook testified improperly. Thus, Appellant is not by any stretch of the imagination referring to "evidence." It is proper for either side to seek to know what a witness can and will contribute. Secondly, Appellant invokes the *Brady* rule apropos of the situation which developed at trial when the prosecution played a video-tape of a statement given by the eye-witness and alleged co-felon, Nathaniel Sanders. Defense counsel recalled Officer Cook who testified that the jury had been shown only a part of the video-tape. Prior to trial the prosecution had informed Appellant's attorney by letter of the existence of this tape and offered to provide a viewing of the tape for the attorney. The remainder of the tape was then played for the jury. According to Appellant, this segment of the tape revealed inconsistencies in the in-court testimony of Sanders. We need not decide whether or not this latter portion of the video-tape was, as Appellant says, favorable to Appellant. The purpose of the *Brady* rule is not to punish the prosecution for alleged negligence, stupidity, or bad faith, but to insure a fair trial. *Brady, supra,* 373 U.S. at 87. The jury heard and saw the entire tape. Thus, the purpose of the *Brady* rule was not transgressed.

## IX.

Appellant claims that the trial court erred in permitting the rebuttal testimony of Mary Ann Sanders, sister of Nathaniel Sanders. At trial, Appellant's objection was on the basis that Ms. Sanders had violated the court's order, which was in response to defense counsel's request, for a separation of witnesses. Once a separation of witnesses has been ordered, what to do about a violation of the order lies within the discretion of the trial court. The

court's ruling will not be disturbed unless there is a clear abuse of that discretion. *Harris* v. *State,* (1974) 262 Ind. 208, 314 N.E.2d 45; *Myslinski* v. *State,* (1971) 257 Ind. 453, 275 N.E.2d 544; *Maynard* v. *State,* (1971) 257 Ind. 336, 274 N.E.2d 396.

In his brief, Appellant's appellate counsel also claims that rebuttal testimony is limited to the refutation of *new* issues. No authority is cited for this proposition. Rebuttal evidence may be any competent evidence which explains, contradicts, or disproves the adversary's proof. 23 C. J. S. *Criminal Law* § 1050 (1961) ; *Trinkle* v. *State,* (1972) 259 Ind. 114, 284 N.E.2d 816; *James* v. *State,* (1972) 258 Ind. 392, 281 N.E.2d 469; *McGee* v. *State,* (1952) 230 Ind. 423, 104 N.E.2d 726; *Basset* v. *State,* (1921) 190 Ind. 213, 130 N.E. 118.

## X.

Appellant claims two errors with respect to the indictment. First, he says it was error to allow the State, after testimony, to amend the indictment to conform to the proof when the evidence was that the victim died on March 14, 1973, rather than on March 13, 1973, as the original indictment stated. The pertinent statute reads, in relevant part:

> "An indictment . . . which charges the commission of a crime shall not be dismissed but may be amended . . . at any time because of any immaterial defect, including:

> \* \* \*

> (9) Any other defect which does not prejudice the substantial rights of the defendant."

Ind. Code § 35-3.1-1-5, Burns § 9-907 (1974 Supp.). Time is not of the essence in a case of murder. *Crickmore* v. *State,* (1937) 213 Ind. 586, 12 N.E.2d 266. It is sufficient if the indictment reveals and the proof establishes that death occurred within a year and a day of the injury. *Alderson* v. *State,* (1924) 196 Ind. 22, 145 N.E. 572. It was proper to allow the amendment to the indictment,

Next, Appellant claims that his Motion in Arrest of Judgment, which alleged "that the facts stated in the . . . indictment do not constitute a public offense under the laws of the State of Indiana," should not have been overruled. In his brief, Appellant's counsel, again without citation of authority, states that the indictment was defective because it failed to allege the element of intent to commit armed robbery. Omitting formal parts, the indictment read as follows:

"The Grand Jury of the County of Allen, State of Indiana, upon their oath, do present that on or about the 12th day of March, 1973, in the County of Allen, State of Indiana, the defendant Joe Buchanan, Jr. did unlawfully and feloniously kill and murder Richard Gfell, a human being, in an attempt to perpetrate a robbery, by then and there unlawfully and feloniously attempting to take from the person of the said Richard Gfell an article of value, by violence, while armed with a certain deadly weapon called a shotgun, by shooting at and against the said Richard Gfell with said shotgun and thereby inflicting a mortal wound in and upon the said Richard Gfell, of which said mortal wound the said Richard Gfell died on the 13th day of March, 1973.

And so the Grand Jury aforesaid, upon their oath aforesaid, do say and charge that the said Joe Buchanan, Jr., in the manner and form aforesaid, did unlawfully and feloniously kill and murder the said Richard Gfell, in an attempt to perpetrate a robbery, being contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Indiana."

It is difficult to meet Appellant's arguments head-on because they are so nebulously constructed. We can only say that a fair reading of this affidavit indicates that it clearly and specifically informed the defendant of the particular crime with which he was charged. *McCloskey* v. *State*, (1944) 222 Ind. 514, 53 N.E.2d 1012; *Edwards* v. *State*, (1942) 220 Ind. 490, 44 N.E.2d 304. We also point out that Motions in Arrest of Judgment have been abolished in Indiana. Ind. R. Crim. P. 3 (B) ; *Beard* v. *State*, (1975) 262 Ind. 643, 323 N.E. 2d 216.

## XI.

Appellant claims error in the trial court's refusal to give three (3) of Appellant's tendered instructions. However, each of the three tendered instructions was an instruction in excess of the number permitted by Ind. R. Crim. P. 8. No error may be predicated upon the refusal to give such an instruction. Ind. R. Crim. P. 8. Appellant also claims that seven (7) of the State's instructions which the trial court gave to the jury should not have been given. Ind. R. Ap. P. 8.3(A)(7) states:

> "When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto. Any error alleged in the motion to correct errors not treated as herein directed shall be deemed waived."

Appellant has totally failed to follow this requirement. In four (4) of the seven of the instances Appellant merely cites the instruction and objection by transcript page number. In the other three (3) instances there is no citation at all. In this case the non-compliance with this rule has been so gross that the spirit as well as the letter of the rules has been violated. For this reason we deem the instruction issues waived.

Finding no error, we affirm the judgment of the trial court.

Givan, C.J., Hunter and Prentice, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 332 N.E.2d 213.