**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**P. JEFFREY SCHLESINGER**
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| OSCAR GUILLEN, SR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 56A03-1204-CR-157 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Daniel J. Molter, Judge (Newton County)
The Honorable Clarence D. Murray, Judge (Lake County)
Cause Nos. 56D01-1108-FD-73 & 45G02-0911-FD-128

**July 16, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Oscar Guillen, Sr., appeals his convictions for two counts of Class D felony intimidation and his status as an habitual offender. We affirm.

**Issues**

Guillen raises four issues, which we restate as:

    I.        whether the trial court properly denied his motion for discharge under Indiana Criminal Rule 4(B);

    II.       whether the trial court properly denied his motion to represent himself;

    III.     whether the trial court committed fundamental error by allowing the State to amend the charging information; and

    IV.    whether the evidence is sufficient to sustain his intimidation convictions.[1]

**Facts**

In 2008, Lake County Superior Court Magistrate Nanette Raduenz was named as the special judge in two civil cases filed by Guillen, Guillen v. Pollack and Guillen v. Wilson. Guillen was incarcerated at the time. In Pollack, Magistrate Raduenz granted the defendants' motion to dismiss in March 2009, which terminated the case against all the defendants. In Wilson, Magistrate Raduenz granted a motion to dismiss, which terminated the case against all defendants except one.

On April 29, 2009, Guillen filed a motion for change of judge in Wilson. In the pro se motion, Guillen stated in part:

---

[1] Guillen does not challenge his status as an habitual offender.

Therefore it is clear to me that this she devil does not & is not going to "respect" this Plaintiff Mr. Guillen Sr's United State's constitutional rights. As this special piece of sh** so called judge, has drawn first blood in which the 2nd telephonic hearing just established this she devil's provocation against my person. And if this piece of crap she devil continues to reside on my civil case and continues to disrespect & "provoke" this man Sir Oscar Guillen Sr. the first chance I get I am going to slap the holy f***ing sh** out of your f***ing a**! As then our "respect" for one another will be even. And if you retaliate I will beat the holy sh** out your f***ing a**! You f***ing b***h!

Wherefore, this plaintiff Mr. Oscar Guillen Sr. deeply prays this f***ing she devil piece of crap disqulifies herself off my f***ing civil rights case. As do I make myself perfectly clear "b***h!!!"

State's Ex. 1B at 3-4 (grammar and spelling errors in original).

On August 24, 2009, Guillen wrote to Judge Elizabeth Tavitas regarding Magistrate Raduenz as follows:

Ms. Tavitas, I am writing & mailing you this pleading because this Ms. Raduenz is totally disrespecting me & my rights as her corrupted judgement dismissing my claims against the other defendants is a totally obvious of said disrespect in which I will not tolerate. As self defense will be my defense for protecting my property of my constitution has given me.

More so any & all other corrupted decision she make from here on is just provoking me in which is another defense I will claim when I beat the f***ing sh** out of her. Totally serious.

(P.S.) mail me back a copy of all documents stamped.

Thanks!

State's Ex. 2 at 1 (grammar and spelling errors in original).

3

On November 4, 2009, the State filed criminal charges against Guillen in Lake County.[2] The warrant was served on Guillen on October 25, 2010, and the trial court appointed a public defender to represent Guillen. On November 10, 2010, Guillen's counsel filed a motion to determine Guillen's competency, and the trial court ordered that Guillen be evaluated by appropriate mental health professionals.

At hearings on January 14, 2011, and March 25, 2011, Guillen became disruptive and was found in contempt of court. At a hearing on May 13, 2011, Guillen was again disruptive and shouted racial epithets. On May 15, 2011, Guillen filed a motion to withdraw the competency determination, which the trial court denied. In June 2011, the trial court barred Guillen from appearing in the court due to his outbursts, and the trial court also ordered that a third mental health professional examine Guillen.

On July 8, 2011, Guillen filed a motion for a speedy trial. On July 15, 2011, Guillen filed a motion for change of venue and a motion for substitution of counsel. Both motions were granted, and the cause was transferred to Newton County on August 4, 2011. The trial court in Newton County set a trial for October 17, 2011, but the trial court later vacated that trial date and ordered Guillen to undergo the third competency examination. On November 17, 2011, the trial court held the competency hearing, and Dr. Douglas Caruana and Dr. John Yarling testified that Guillen had a mental illness. Dr. Yarling and Dr. Bhawani Prasad found that Guillen was competent to stand trial. The

---

[2] This charging information is not included in Appellant's Appendix, and the CCS does not specify the charges that were filed at that time. Guillen also claims that he filed a pro se motion for a speedy trial on June 23, 2010. The CCS indicates that Guillen filed correspondence and an appearance on that date, but the record does not establish that he filed a motion for a speedy trial on that date.

4

trial court found Guillen competent to stand trial. The trial court then set Guillen's trial for February 14, 2012.

On December 2, 2011, Guillen filed a motion to proceed pro se. Then, on December 14, 2011, Guillen filed a pro se document entitled "Motion to Revive Pro-Se Attorney Status with A Stand-By Counsel Attorney." App. p. 89. Guillen also filed a pro se document entitled "Motion to Withdraw Lake County Public Defender Division and Counsels," in which Guillen made numerous racial remarks regarding his counsel and requested a Newton County public defender rather than a Lake County public defender. Id. at 94. After a hearing, the trial court denied Guillen's motion for a different public defender. The trial court also entered an order concluding: "The Court having heard the statements of the Defendant, the Court finds it to be in the best interest of the Defendant to be represented by his court appointed attorney." App. p. 112.

On December 29, 2011, the State filed an amended information charging Guillen with Count I, Class D felony intimidation for threatening Magistrate Raduenz in August 2009; Count II, Class D felony intimidation for threatening Magistrate Raduenz in April or May 2009; and alleging that he is an habitual offender. On January 12, 2012, Guillen filed a pro se "Motion to Correct Errors for the Dismissal of These Cases Under Criminal Rule 4(B)(1)," which the trial court denied. Id. at 165.

Guillen's jury trial was held on February 14, 2012, and he was found guilty as charged. The jury also found that he was an habitual offender. The trial court sentenced him to concurrent sentences of two years on each conviction enhanced by forty-eight months due to his status as an habitual offender. Guillen now appeals.

5

**Analysis**

*I. Criminal Rule 4*

Guillen first argues that the trial court erred by denying his motion for discharge under Indiana Criminal Rule 4. We review a trial court's ruling on a Criminal Rule 4 motion for an abuse of discretion. Curtis v. State, 948 N.E.2d 1143, 1149 (Ind. 2011).

Both the United States Constitution and the Indiana Constitution protect the right of an accused to a speedy trial. Cundiff v. State, 967 N.E.2d 1026, 1027 (Ind. 2012) (citing U.S. Const. amend. VI & Ind. Const. art. 1, § 12). "The speedy-trial right is a 'fundamental principle of constitutional law' that has been zealously guarded by our courts." Id. (quoting Clark v. State, 659 N.E.2d 548, 551 (Ind. 1995)). Criminal Rule 4 generally implements the constitutional right of an accused to a speedy trial. Id. Subsection (B)(1) of Criminal Rule 4 is at issue here and provides, in part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time.

Criminal Rule 4 places an "affirmative duty" on the State to bring a defendant to trial. Cundiff, 967 N.E.2d at 1028. "By the same token, the purpose of Criminal Rule 4 is not to provide defendants with a technical means to avoid trial but rather to assure speedy trials." Id.

Guillen argues that he filed a motion for a speedy trial on June 23, 2010, and that the 70-day deadline began to run on October 25, 2010, when the warrant was served on him. However, the record does not reflect that Guillen filed a motion for a speedy trial on June 23, 2010. Rather, the CCS merely reflects that the trial court received "Correspondence and Appearance" from Guillen, who was unrepresented at that time. App. p. 26. The right to a speedy trial under Criminal Rule 4(B) is "not self-executing." Buchanan v. State, 263 Ind. 360, 364, 332 N.E.2d 213, 217 (1975). "It is the duty of the Appellant to make a proper record and to bring a proper record before an appeals court." Id. The record does not show that the rule was invoked on June 23, 2010. Id.

The record does indicate that Guillen's counsel filed a motion for a speedy trial on July 8, 2001. However, Guillen had previously filed a motion to determine his competency, and delays attributable to a defendant's claim of incompetency are charged against the defendant.[3] Curtis, 948 N.E.2d at 1150 (discussing Criminal Rule 4(C)). The trial court found Guillen competent on November 17, 2011. Thus, the time between July 8, 2011, and November 17, 2011, is chargeable to Guillen. Upon finding Guillen

---

[3] Guillen argues that the time during which his competency was being determined should not be attributable to him because he had filed a motion to withdraw the competency determination. Guillen cites no authority for the proposition that this time should not count against him and makes no argument that the trial court should have granted his motion to withdraw the competency determination.

7

competent, the trial court set the trial date for February 14, 2012. The State concedes that this was eighteen days beyond the 70-day period. However, "[w]hen a movant for an early trial date on a date within the 70 day period does not then object to a trial date which falls outside the limit, he has abandoned his request." Townsend v. State, 673 N.E.2d 503, 506 (Ind. Ct. App. 1996). Guillen's counsel did not object to this trial date, and the argument is waived.

Further, we note that Guillen did not file a proper motion for discharge. On January 12, 2012, Guillen filed a pro se motion for dismissal under Criminal Rule 4(B). However, once counsel is appointed, a defendant speaks to the court through counsel. Underwood v. State, 722 N.E.2d 828, 832 (Ind. 2000). Because counsel had been appointed before Guillen filed his motion, the trial court properly denied the motion to dismiss.

## II. Guillen's Request to Represent Himself

Guillen argues that the trial court erred by denying his request to represent himself. Guillen argues that he was improperly denied the right to represent himself under the United States and Indiana Constitutions. Faretta v. California, 422 U.S. 806, 821, 95 S. Ct. 2525, 2534 (1975), held that the right of self-representation is implicit in the Sixth Amendment to the United States Constitution, and Article 1, Section 13, of the Indiana Constitution also guarantees this right. Stroud v. State, 809 N.E.2d 274, 279 (Ind. 2004). "A request to proceed pro se is a waiver of the right to counsel, and consequently, there are several requirements to invoking the right of self-representation successfully." Id. "A defendant's 'request must be clear and unequivocal, and it must be

8

[made] within a reasonable time prior to the first day of trial.'" Id. (quoting Russell v. State, 270 Ind. 55, 64, 383 N.E.2d 309, 315 (1978)).

Here, on December 2, 2011, Guillen filed a motion to proceed pro se. Then, on December 14, 2011, Guillen filed a pro se document entitled "Motion to Revive Pro-Se Attorney Status with A Stand-By Counsel Attorney." App. p. 89. At a hearing on Guillen's motions, the following discussion occurred:

> The Court: And I would be very fearful of permitting you to – I'm fearful that it would be very harmful to you for you to serve as lead counsel –
>
> Guillen: Well, your Honor –
>
> The Court: – And conduct the examinations as opposed to your trained attorney.
>
> Guillen: That's exactly why I'm asking for standby counsel.
>
> The Court: I understand that.
>
> Guillen: So then if I do get nervous or fumble up, I'll just have my standby counsel take over or assist me if I am in debate of what I should say or what shall I do or what I should present. But however, I have been practicing or studying the law for eight years now with all my law books and research materials in prison. I dedicated my life to the law and I studied the law in the majority in civil cases seven days a week, twenty hours a day, seven years. That's all I do.
>
> The Court: Do you think it might be more beneficial for him to serve as your public defender and you simply assist him? It still gives you the right to tell him what –
>
> Guillen: Well, that's exactly, that's exactly my point. I didn't want to bring it across to the Court that way but since you did competently, that's what I wanted to do. I wanted a standby counsel to control the whole trial. He was going to do it just like any other time, but I want the last say.

9

\* \* \* \* \*

> The Court: Well see, actually you just got your legal terms intertwined. So what we're going to do here is he is your counsel and you can standby, instead of the other way around.

Tr. pp. 50-51. The trial court then entered an order concluding: "The Court having heard the statements of the Defendant, the Court finds it to be in the best interest of the Defendant to be represented by his court appointed attorney." App. p. 112.

Our supreme court has agreed that "the right to self-representation may be waived through conduct indicating that one is vacillating on the issue or has abandoned one's request altogether." Stroud, 809 N.E.2d at 281 (quoting Williams v. Bartlett, 44 F.3d 95, 100 (2d Cir. 1994)). Although Guillen initially asked to represent himself, he clarified at the hearing that he really wanted counsel to represent him at the trial but that he wanted the "last say." Tr. p. 51. To the extent Guillen abandoned his request to represent himself, Guillen has waived this argument.

If Guillen instead was requesting some sort of hybrid representation, our supreme court has recognized that "[t]he Sixth Amendment does not require a trial judge to permit hybrid representation." Henley v. State, 881 N.E.2d 639, 647 (Ind. 2008) (quoting Sherwood v. State, 717 N.E.2d 131, 135 (Ind. 1999)). Consequently, the trial court properly denied Guillen's request to represent himself.[4]

---

[4] We further note that "[a] trial judge may terminate self-representation by a defendant who deliberately engages in serious or obstructionist misconduct." German v. State, 268 Ind. 67, 73, 373 N.E.2d 880, 883 (1978). Guillen repeatedly engaged in serious misconduct during these proceedings, and that misconduct also could have served as a basis for rejecting Guillen's request to represent himself. Moreover, "a trial court may deny a defendant's request to act pro se when the defendant is mentally competent to stand trial but suffers from severe mental illness to the point where he is not competent to conduct trial proceedings

10

### III. Amendment of Charges

Guillen argues that fundamental error occurred when the trial court allowed the State to amend the charging information. Guillen admits that he did not object to the amendment. The failure to object waives an issue for review unless fundamental error occurred. Hoglund v. State, 962 N.E.2d 1230, 1239 (Ind. 2012). "The fundamental error doctrine provides a vehicle for the review of error not properly preserved for appeal." Id. "In order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process." Id. "Harm is not shown by the fact that the defendant was ultimately convicted; rather harm is found when error is so prejudicial as to make a fair trial impossible." Id.

Indiana Code Section 35-34-1-5 allows the charging information to be amended in "matters of substance" at any time "before the commencement of trial . . . if the amendment does not prejudice the substantial rights of the defendant." For the amendment to affect Guillen's substantial rights, he must prove he was denied "a reasonable opportunity to prepare for and defend against the charges." Suding v. State, 945 N.E.2d 731, 735-36 (Ind. Ct. App. 2011) (citing Sides v. State, 693 N.E.2d 1310, 1313 (Ind. 1998), abrogated on other grounds by Fajardo v. State, 859 N.E.2d 1201, 1206 (Ind. 2007)), trans. denied. The substantial rights of a defendant are not violated if the

---

by himself." Edwards v. State, 902 N.E.2d 821, 824 (Ind. 2009). Although Guillen was found competent to stand trial, two mental health professionals found that he suffered from a mental illness. However, the trial court made no findings that Guillen's mental illness was severe to the point that he was not competent to represent himself, and we do not address the State's argument on this point.

amendment does "not affect any particular defense or change the positions of either of the parties." Id.

Guillen was initially charged on November 4, 2009. On December 29, 2011, the State filed an amended information charging Guillen with Count I, Class D felony intimidation for threatening Magistrate Raduenz in August 2009; Count II, Class D felony intimidation for threatening Magistrate Raduenz in April or May 2009; and being an habitual offender. Although the initial information was not provided to us in the record, the parties seem to agree that the amended information added Count II. Guillen argues that he was prejudiced because the evidence against him was doubled and because the jury may have been confused regarding the distinction between retaliation for prior lawful acts and potential future acts.

The relevant issue is whether Guillen's substantial rights were violated. We conclude they were not. Guillen's defense to both charges was the same—Magistrate Raduenz was not placed in fear and the threats were for future acts, not retaliation for a prior lawful act. Thus, the amendment did not affect Guillen's defense, and he has failed to demonstrate that the amendment changed his position in any way. An increase in the evidence against him and remote possibilities of jury confusion are simply insufficient to demonstrate that his substantial rights were violated. Further, Guillen has not demonstrated fundamental error by showing that the amendment was so prejudicial as to make a fair trial impossible.

## IV. *Sufficiency of the Evidence*

Next, Guillen argues that the evidence is insufficient to sustain his convictions. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

The offense of intimidation is governed by Indiana Code Section 35-45-2-1, which provides that "[a] person who communicates a threat to another person, with the intent . . . that the other person be placed in fear of retaliation for a prior lawful act" commits intimidation. The offense is a Class D felony if the threat is communicated to a judge. The State charged Guillen with intimidation for knowingly or intentionally communicating a threat to Magistrate Raduenz with the intent that she "be placed in fear of retaliation for a prior lawful act, to-wit: presiding over civil cases filed by [Guillen] and making rulings against him in those cases." App. p. 128.

According to Guillen, the threats were not intended to place Magistrate Raduenz in fear of retaliation for a prior lawful act. Rather, Guillen argues that the threats were directed toward possible future acts by Magistrate Raduenz. We acknowledge that if the alleged threat is aimed at a future action, then it is not retaliation for a prior lawful act. Ransley v. State, 850 N.E.2d 443, 447 (Ind. Ct. App. 2006), trans. denied. However, Guillen's threats to Magistrate Raduenz constituted threats as retaliation for her prior lawful acts.

13

Magistrate Raduenz completely dismissed one of Guillen's civil actions and dismissed all defendants except for one in another of his civil actions. Guillen then threatened to beat Magistrate Raduenz as a response to her presiding over his cases and her dismissal of his claims. Guillen's threats of future harm to Magistrate Raduenz were based on her prior lawful acts. We conclude that the evidence is sufficient to sustain Guillen's convictions for intimidation.

## Conclusion

The trial court properly denied Guillen's pro se motion for discharge under Indiana Criminal Rule 4(B) and properly denied Guillen's motion to represent himself. Further, fundamental error did not occur when the trial court allowed the State to amend the charging information, and the evidence is sufficient to sustain Guillen's convictions. We affirm.

Affirmed.

NAJAM, J., and BAILEY, J., concur.

14